STEPHENS, Appellant, vs. ELVER, Respondent.

*November 26 — December 16, 1898.*

*Suretyship: Release by alteration of contract: Advances to building contractor: Liens: Estoppel.*

1. A surety for the performance of a contract will be released from liability by a change or alteration of such contract without his consent, only when such change is material and substantial.

2. That the owner of a building, being constructed under a contract which provided for payment in monthly instalments, loaned small sums to the contractor in advance of the next instalment to become due, taking his due bills therefor which were paid out of such instalment, is not such a material alteration of the contract as will release the surety on the bond of the contractor for the performance of the contract, so as to permit him to acquire and enforce a lien on the building for materials furnished by him therefor.

3. The facts that the contractor in such case asked the first advance at the suggestion of the surety, and that the latter continued to furnish materials with knowledge of said transactions, would estop him from insisting on a release.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

On March 6, 1897, one Joseph Pickering contracted with defendant to furnish the necessary materials and do the required mason work in the erection of a brick hotel building on the premises of the latter, in the city of Madison. Such work was to be done according to the plans and specifications prepared by Conover & Porter, architects. The contract price for the materials and work was to be $5,349, and was to be paid in monthly instalments,— ninety per cent. as the work progressed, on estimates of the superintendent, and the remainder when the work was completed. On the same date, Pickering delivered to defendant a bond, signed by the plaintiff as surety, in the penal sum of $5,000, conditioned that he would carry out the contract and pay all bills for labor and materials incurred therein. In consideration of plaintiff signing his bond, Pickering agreed to purchase from him the brick, rubblestone, caps, and sills necessary for the building, at prices then agreed upon. Pickering entered upon said work, and from time to time purchased building materials from plaintiff to the amount of $1,202.39, on which he paid $466.31 on July 15, 1897, and no more.

The court finds that Pickering completed the contract, and that defendant paid him in full, as provided by the contract, ninety per cent. as the work progressed, on monthly estimates of the architects, and the remainder upon completion and acceptance of the work. The court further finds that, during the progress of the work, Pickering applied to the defendant for certain payments in advance of the estimates, with the knowledge and at the suggestion of the plaintiff, which was refused, and that no payments or advances were in fact made, except they were duly made upon the estimates of the superintendents. During the progress of the work, however, certain transactions occurred between Pickering and defendant, which plaintiff claims substantially varied the

terms of the building contract and operated to release him as surety on said bond. The court made no finding in detail as to these transactions, but the evidence shows that they were based upon the following facts: Pickering commenced work under the contract in May, and the first estimate was made June 1st. Sometime in May, Pickering wanted $600 on the contract, but defendant refused to make any advance. Later he wanted to go to Fond du Lac to see about some stone for the building, and he applied to defendant for the money to pay his expenses. Defendant declined to pay him anything on the contract, but finally loaned him $20, taking his due-bill therefor, which was thereafter repaid defendant from the amount due on the June estimate. In June, defendant loaned Pickering $200 to pay freight on some of the building material. On June 17th, one of the men quit work, and Pickering obtained another loan of $40; and on June 21st, under similar circumstances, a further loan of $17.30, taking a note or duebill in each instance. The next estimate became due July 1st, but was in fact made July 3d. July 4th was Sunday. Some of the men wanted their money for the "Fourth;" so, on June 30th and July 2d, Pickering arranged for a further loan, and defendant gave his personal check to the men, and took Pickering's note, which was repaid to defendant out of the July estimate, and which was considerably less than the amount due Pickering thereon. The court finds that these transactions were personal loans to Pickering, and were made without reference to the contract, and upon his personal security. Plaintiff gave notice to defendant that he had furnished materials to Pickering, on August 7th, and on the 17th filed his lien. Prior to the receipt of such notice by defendant, he had fully settled and paid Pickering the amount due on his contract.

As conclusions of law, the court found that there had been no violation of the contract, and that plaintiff, as

surety, had no right to assert a lien against the defendant's building, and gave judgment dismissing the complaint. The plaintiff appeals.

*H. W. Chynoweth*, for the appellant.

For the respondent there was a brief by *R. M. La Follette* and *G. E. Roe*, and oral argument by *Mr. Roe*.

BARDEEN, J. The sole question for decision in this case is whether the transactions mentioned show such a material alteration in the original contract as to release the surety. Unless this question should be answered in the affirmative, the plaintiff has no standing in court. The rule laid down by all the authorities is that one who is a surety for the contractor on his bond to pay for all materials cannot claim a lien for materials furnished by him at the request of the contractor. That would enable a man to exact payment for what he had promised should be paid by another. Phillips, Mechanics' Liens, § 43a; *McHenry v. Knickerbacker*, 128 Ind. 77; *Spears v. Lawrence*, 10 Wash. 368; *Herrell v. Donovan*, 7 App. Cas. (D. C.), 322.

Another rule, however, is to the effect that " a surety for the completion of work to be performed by the principal, where, by the terms of the contract, the principal is to be paid by instalments, is discharged if the principal is paid faster than the contract provides. The surety is thereby deprived of the inducement which the principal would have to perform the contract in due time. . . . And it is no answer to say that it is for the advantage of the surety, or that he has sustained no prejudice." Brandt, Suretyship & G. (2d ed.), § 397. Mr. Justice STORY, speaking of the contract of suretyship, in *Miller v. Stewart*, 9 Wheat. 680, says: "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended, by implication, beyond the terms of his contract.

To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal." This language has been often quoted and many times misunderstood. Some courts, in deference to his great learning and ability, and without studying the case he then had under consideration, have followed this statement of the law to the very utmost limit of technicality. But the same court, in a later case, says: "*There must be another contract substituted for the original contract, or some alteration in a point so material as, in effect, to make a new contract, without the surety's consent, to produce that result.*" *Benjamin v. Hillard*, 23 How. 149. In another case the court again lays down the rule "that any agreement with the creditor which varies *essentially* the terms of the contract without the assent of the surety will discharge him from his responsibility." *Sprigg v. Bank of Mt. Pleasant*, 14 Pet. 201. Thus, it will be seen that the statement so often quoted, "that, if there is any variation in the terms of the original contract, the surety will be released," must mean that such variation must be material and substantial, in the sense that the contract is not the same contract for the performance of which the surety bound himself. This is the principle recognized and enforced in *W. W. Kimball Co. v. Baker*, 62 Wis. 526, where the agreement was that the advances to be made to the principal were to be limited to $600, but were in fact over $1,700. See, also, *Wheeler & W. Mfg. Co. v. Brown*, 65 Wis. 99. In *Sage v. Strong*, 40 Wis. 575, Mr. Justice Lyon, in his opinion, says: "The rule is elementary, and of almost universal application, that a surety for the performance of a contract or obligation is discharged if

such contract or obligation be *materially* changed without his consent." The same language is substantially repeated in *Nichols v. Palmer*, 48 Wis. 110.

We have been led to make these quotations from the authorities, because appellant has asserted the rule to be that, if the contract "is varied *in the least particular*, the surety is released." We understand the rule to be as above stated, and which, we think, will be strengthened by the authorities hereinafter referred to. In *Clagett v. Salmon*, 5 Gill & J. 314, the supreme court of Maryland says: "It is, then, upon the principle that the contract of the surety is changed or varied to his prejudice and without his consent, that the surety is discharged. It is because the creditor has disabled himself from fulfilling the duties and obligations which he owes to the surety that he is released from his responsibility." In *Preston v. Huntington*, 67 Mich. 139, the defendant Platt became surety for the payment of rents by the other defendants. Afterwards the lessor, without consent of the surety, agreed with the lessees to reduce the rent $25 per month. Touching this point, the opinion contains the following: "The reduction of the rent under the new agreement could not affect George W. Platt, Jr. It did not release him from his obligation any more than if the amount of such reduction had been indorsed as a payment upon the lease. No new terms or obligations were imposed by the new agreement. The lessors simply waived their right to $75 a month, as provided in the lease, and agreed to take $50 per month instead. George W. Platt could not complain of this."

The quotation from Brandt on Suretyship heretofore made, to the effect that, if the principal is paid faster than the contract provides, the surety is discharged, is somewhat misleading when compared with the authorities cited to support it. The principal case cited, and which has been referred to very many times by the courts in this country, is *Calvert v. Lon-*

*don Dock Co.* 2 Keen, 638. The syllabus of this case is as
follows: "A contractor undertook to perform certain work,
and it was agreed that three fourths of the work, as finished,
should be paid for every two months, and the remaining
one-fourth upon the completion of the whole work. *Held,*
that the sureties for the due performance of the contract
were released from their liability by reason of payments, ex-
ceeding three fourths of the work done, having, without the
consent of the sureties, been made to the contractor before
the completion of the whole work." Another case cited by
the learned author is *Bragg v. Shain,* 49 Cal 131. In that
case the owner was to pay seventy-five per cent. of the con-
tract price each month as the work progressed, and the re-
mainder when the work was completed. During the progress
of the work, the owner of the building paid the contractor
over $5,000 more than the seventy-five per cent. due on the
contract. The court said: "We are of opinion that the fail-
ure of the Congregational Society to retain in their hands
twenty-five per cent. of the contract price, as stipulated in
the contract with Shain, operated to release the defendant
Bonnett as the surety of the latter." Two cases are also
cited from Nevada by Brandt, as sustaining the full doctrine
of the text. In one the owner failed to make weekly pay-
ments as agreed, and later paid a considerable sum in excess
of the reserve under the contract. This was considered a
substantial violation of the contract, which released the sure-
ties. *Truckee Lodge v. Wood,* 14 Nev. 293. In the other case
there was a failure of the owner to make weekly payments,
as the contract required, which operated to discharge the
sureties. *Carson C. H. Asso. v. Miller,* 16 Nev. 327.

All of these cases, except the last one, are based upon the
fact that the owner failed to keep the reserve provided for
in the contract. The effect of this stipulation in the contract,
as suggested in *Calvert v. London Dock Co.,* was to urge the
contractor to perform the work, and to leave in the hands

of the owner a fund wherewith to complete it if he did not, and thus materially tended to protect the sureties. In *Morgan Co. Comm'rs v. Branham*, 57 Fed. Rep. 179, the contract provided that when, in the opinion of the owner, the building was half completed, an estimate should be made, and the owners should then pay a sum equal to eighty-five per cent. of the work done, provided the amount paid should not exceed $7,800, and the remainder of the contract price when the work was fully completed. When the work was about one third done, the plaintiff, without an estimate having been made, paid the contractor over $10,000 on the contract. The court said: "Such a gross departure from the terms of the contract, to the prejudice of the sureties, operates to release them from the bond in suit." In each of the following cases cited to support the appellant's contention, the building contract contained a stipulation reserving a portion of the contract price until the building was completed, which was violated by the owner paying the contractor a sum largely in excess of the reserve. *St. Mary's College v. Meagher* (Ky.), 11 S. W. Rep. 608; *Ryan v. Morton*, 65 Tex. 258; *Taylor v. Jeter*, 23 Mo. 244; *Bell v. Paul*, 35 Neb. 240.

An extreme case, and one confidently relied on, is *Simonson v. Grant*, 36 Minn. 439. Plaintiffs furnished building material to the contractors, and were sureties for the faithful performance of the contract. After the work was commenced and the first instalment paid, the owner so far departed from the terms of the contract that payments were made by him to divers persons on the order of the contractors, without reference to the state of the work or the terms of the contract, and in some instances to an amount exceeding the instalments due as stipulated therein, and in anticipation thereof. The language of the decision is as follows: "In anticipating the instalments and otherwise disregarding the conditions of the contract, they were practically so modified that it was not the contract to the performance of which

plaintiffs had bound themselves as sureties. In such cases the surety may be deprived of the inducement which the principals would have to perform the contract in due time as the contract requires."

Thus, it will be seen that there must be a substantial or material variation of the contract that will operate to release the surety. In *Bell v. Paul*, 35 Neb. 240, it was admitted that the owner of the building paid the contractors $300 seven days before an estimate was due. This sum was advanced to or loaned to the contractors with the understanding that the sum should be refunded when the next estimate was made. The court said: " We do not yield assent to the proposition that the advancement of the $300, under the circumstances, released the sureties. It was not, in fact nor in law, a payment upon the contract, but a mere loan of that amount until an estimate was obtained, and which did not in any manner violate the contract or discharge the sureties." In *Robinson v. Hugenkamp*, 52 Minn. 101, it was held that payments to the defendant's principal of proper amounts, but at intervals two weeks different from that provided in the contract, were immaterial. In a case in the state of Washington, the owner accepted an order given by the contractor to be paid out of the next estimate, but, at the time of its acceptance of the order, paid the materialman a portion of the amount due on the order. This was held not to relieve the sureties. *De Mattos v. Jordan*, 15 Wash. 378.

When we come to apply the principles to be extracted from the foregoing authorities to the case at bar, we have no difficulty in saying that the findings and conclusions of the trial court must be sustained. We base this conclusion upon the fact that the alleged advances were so inconsiderable and trifling in amount as not to constitute a material variation of the contract, and upon the further fact that plaintiff is not in a position to insist upon release, because

Stephens vs. Elver.

it was at his suggestion that Pickering made the first request for an advance on the contract. He knew that these transactions had taken place, and continued to furnish material to Pickering. He hardly stands in a position to insist upon a forfeiture, even if these transactions should be deemed to be a material violation of the contract. Plaintiff's position is not like that of an ordinary surety who has loaned his credit to a friend without consideration. He became surety in this bond only in consideration of the privilege of furnishing the brick and other material mentioned, at fixed prices. His position is similar to that of the surety in *Clement v. Philadelphia*, 137 Pa. St. 328, where the city was permitted to offset a prior judgment it had obtained against the principal contractor, against the amount due him on his contract, notwithstanding the surety had made advances to the contractor to assist him in completing the work.

It is undisputed that the second estimate on the contract was due July 1st. The fact that defendant, on the 2d, advanced some money to the men employed on the work, so that they could fittingly celebrate the Fourth, in anticipation of the estimate then due, is not at all significant. No doubt that all parties understood that the estimate was then being made or would be made shortly thereafter. It was in fact made and submitted on the 3d. To hold this to be a substantial alteration of the contract would be going to the extreme limit of technicality.

The court found, upon ample evidence, that these alleged advances were not made under the contract, but were personal loans to Pickering. While transactions of this kind are supported by some of the authorities cited, we prefer to rest this decision upon the holding above stated.

*By the Court.*— The judgment of the circuit court is affirmed.