·GRAFTON, Respondent, vs. HINKLEY and others, Appellants.

*May 22 — June 20, 1901.*

·*Judgment:* Res judicata: *Parties: Building contracts: Release of sureties.*

1. Contractors agreed to erect a building for plaintiff and gave bond, with certain of the defendants as sureties, for faithful performance of the contract. Before the building was completed a corporation was organized, to which plaintiff conveyed the property. Afterwards the contractors brought suit against the corporation to enforce a lien for an amount alleged to be due under the contract, which was alleged to have terminated when the building was inclosed, and also for the value of labor and materials furnished after such alleged termination of the contract. Neither the plaintiff

Grafton vs. Hinkley and others.

herein nor the sureties on the contractors' bond were made parties to that suit, though the corporation notified the sureties of the pendency of the action and that there had been a breach of the bond for which they were liable. No counterclaim for such breach was pleaded in that action. Judgment was rendered therein against the contractors, on the ground that all the services and materials for which the lien was claimed had been rendered and furnished under the original contract, which the contractors had failed to perform, and hence that they were not entitled to such lien. In this action, brought against the contractors and their sureties for breach of the original contract, the contractors counterclaimed for an amount alleged to be due for extra work and materials. *Held*, that the former judgment was not conclusive upon the defendants.

2. A building contract provided that work thereunder should be terminated with inclosing the building unless the contractors should be notified in writing, by a certain date, to complete the work. The contractors waived such written notice and proceeded with the work of completing the building. *Held*, that the sureties on the contractors' bond for faithful performance were not thereby released as to the portion of the contract which was not to be performed unless the written notice was given. DODGE, J., dissents.

APPEALS from a judgment of the circuit court for Fond du Lac county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

This action is to recover $2,033.88, with interest from December 18, 1897, as damages for the breach of an agreement in writing made and entered into June 1, 1895, by and between the plaintiff, *Mr. Grafton*, and the defendants, *J. W. Hinkley* and *Harry Powers*, as copartners under the firm name of Hinkley & Powers, wherein and whereby that firm agreed, in effect, to furnish all the material and perform all the work required in the construction and erection of a stone and brick seminary building for Grafton Hall at the place described, and do everything necessary and required to be done in, to, and about said stone and brick seminary building, according to the plans and specifications made for the same by Conover & Porter, architects, dated May 31, 1895; that all work should be executed in a thor-

ough, complete, and most workmanlike manner, and agreeable to such directions as might be given from time to time by the architects and superintendents, through their local superintendent or such person as might be employed by *Mr. Grafton* to superintend the work, and to such superintendent's full and entire satisfaction, without reference thereon to any other person; that, if any alteration should thereafter be made by orders of *Mr. Grafton* or the superintendents, which they might deem necessary, varying from the plans or specifications, either by adding thereto or diminishing therefrom, or otherwise however, such alterations should not vacate the contract thereby entered into, but the value thereof should be ascertained by said superintendents, and added to or deducted from the sum of money thereinafter mentioned, as the case might be; nor should such alterations, either in addition, diminution, or otherwise, supersede the condition for the completion of the whole of the work at the time therein expressed, but Hinkley & Powers should, if such alterations, of whatever sort, required it, increase the number of their workmen, so that the same, as well as the work contained in the plans and specifications, should be completely finished, and so delivered up to *Mr. Grafton*, clean, and in good order for use, inclosed, by December 1, 1895, and finished, if so ordered, April 1, 1896; that all matters of difference between the parties should be judged of, determined, and adjusted solely by the superintendents; that if Hinkley & Powers should neglect or refuse to carry on the work with such dispatch as should be thought necessary by the superintendents to complete the same by the time therein mentioned, or should neglect or refuse to furnish such material for or to do the work as by the superintendent directed, it should be lawful for *Mr. Grafton* or his superintendents to employ such other person or persons as he should think fit or necessary to furnish such unprovided material, or to finish any of the unfinished work,

after having given notice in writing to Hinkley & Powers in the manner therein prescribed; and the bill or bills for any artificer that might be employed, or for materials furnished, and all expenses incidental thereto, should be deducted out of any money that might be due or to become due on the contract, and owing to Hinkley & Powers, or any part thereof, as the case might be; and, in case of a deficiency, Hinkley & Powers and their sureties should be held liable therefor; that all payments made on the work during its progress were to be on account of the contract, and should in no case be construed as an acceptance of the work executed and materials furnished, and that Hinkley & Powers should be liable to all the conditions of the several agreements until the work should be completed and accepted as finished; that no part of the work covered by the contract was to be relet or subcontracted without the consent in writing of *Mr. Grafton;* that in consideration of the faithful performance by Hinkley & Powers, as above stated, *Mr. Grafton* agreed to pay Hinkley & Powers, on the certificate of the superintendents, $30,373, to be paid in the manner therein stated; that no material should be estimated or paid for until wrought into the construction of the building; that, unless notified in writing to complete the work on or before October 1, 1895, the work under the contract should be terminated with inclosing the building as specified in the specifications or modifications attached, and the settlement made upon the basis of the amended propositions of Hinkley & Powers and Joseph Hutter.

At the time of the execution of such contract,— June 1, 1895,— the contractors, Hinkley & Powers, as principals, and the defendants *L. D. Hinkley* and *M. J. Althouse,* of Waupun, as sureties, under their respective hands and seals executed a bond to the plaintiff in this action in the penal sum of $20,000, to be paid to *Mr. Grafton,* for which payment well and truly to be made they thereby bound them-

selves, their heirs, executors, and administrators, jointly and severally. The condition of the obligation was such that, if Hinkley & Powers should well and faithfully perform all of the conditions contracted to be performed by them as by the terms of said contract stipulated, without fraud or delay, and should pay all bills for labor and material incurred therein, then such bond to be void and of no effect; otherwise to remain in full force and virtue.

On June 7, 1897, Hinkley & Powers commenced an action against a corporation known as Grafton Hall, to enforce a lien for work, labor, and materials furnished under such contract against the seminary building so contracted for; and the judgment entered in that action in favor of of Grafton Hall was affirmed by this court. *Hinkley v. Grafton Hall,* 101 Wis. 69–76. On December 31, 1897, *Mr. Grafton* commenced this action for the breach of such contract against Hinkley & Powers and their sureties named in such bond. After alleging the making of the contract and bond, the complaint in this action alleged, in effect, that Hinkley & Powers entered upon the performance of such contract in June, 1895; that they continued the work and labor and the furnishing of material under the contract until October 31, 1896, when they declared that they had completed the building, and refused to do anything more thereon; that in truth and in fact Hinkley & Powers had not completed the building in several particulars alleged, as they well knew and were notified in writing by such superintendents; that *Mr. Grafton* was damaged by reason of such failure in the sum of $487.80, the reasonable costs and value of finishing the building; that, in addition to such damages, there were at the time Hinkley & Powers so refused to complete the building outstanding bills for lumber, labor, and material incurred by them in their construction of the building amounting to $1,903.59, no part of which had been paid by them, and that the plaintiff herein had

been compelled to pay and discharge the same, as follows: $1,751.73 to Moore & Galloway Lumber Company, for materials, as therein stated; $230 to Fond du Lac Implement Company, as therein alleged; and also $52.15, as therein alleged,— making the gross sum $2,033.88.

The sureties separately answered by way of admissions, denials, and counter allegations, and, among other things, alleged, in effect, that the contract of Hinkley & Powers terminated October 1, 1895, by reason of *Mr. Grafton's* failure to notify these defendants, or either of them, on or before that date, that Hinkley & Powers should complete the contract, and that by such failure of *Mr. Grafton* to give such notice in writing they were released as such sureties. Hinkley & Powers also answered by way of admissions, denials, and counter allegations; and, among other things, alleged a counterclaim for extra work, material, labor, and services by reason of change in plans and specifications, made at the special instance and request of *Mr. Grafton*, which were reasonably worth $2,147.37, no part of which had been paid, and for which they demanded judgment. The plaintiff, by way of reply, put in issue the counterclaim; and also pleaded the judgment in favor of Grafton Hall in the action brought by Hinkley & Powers to enforce a lien against that corporation, as stated.

At the close of the trial the court held that there was no question to go to the jury; that the plaintiff was entitled to judgment as prayed for in his complaint; and thereupon the court made findings of the undisputed facts as stated, and conclusions of law to the effect that Hinkley & Powers waived the giving of the written notice of October 1, 1895, provided for in the contract, and accepted in lieu thereof parol notice; that such waiver in no wise changed the rights or liabilities of the parties to the contract, nor of the sureties who signed the bond; that the sureties remained personally liable upon the bond after such waiver of written

notice and acceptance of parol notice, the same as before; that the plaintiff was entitled to recover the amount prayed for in his complaint, with interest; that Hinkley & Powers were not entitled to recover upon their counterclaim, or any part thereof, by reason of such judgment in favor of Grafton Hall and the fact found that there had been no change in the relations of the parties to the subject matter since.

From the judgment entered thereon accordingly *Hinkley* and *Powers* and the sureties separately bring these two appeals.

For the appellants there was a brief by *Duffy & McCrory*, and oral argument by *J. H. McCrory*. To the point that the failure to serve the written notice to complete the work released the sureties, they cited *Stephens v. Elver*, 101 Wis. 394; *Cowdery v. Hahn*, 105 Wis. 455; *Miller v. Stewart*, 9 Wheat. 680; *Allen v. O'Donald*, 28 Fed. Rep. 17; *Gillet v. Rachael*, 9 Rob. (La.), 276; *Truesdell v. Hunter*, 28 Ill. App. 292; *Douglass v. Reynolds*, 7 Pet. 113; *McCluskey v. Cromwell*, 11 N. Y. 598; *Gates v. McKee*, 13 N. Y. 234; *Strong v. Lyon*, 63 N. Y. 174; *Smith v. Lockwood*, 34 Wis. 72; *Nichols v. Palmer*, 48 Wis. 111; *Sage v. Strong*, 40 Wis. 575.

*Edward S. Bragg*, for the respondent.

CASSODAY, C. J. Before the plaintiff had rested his case, and during the cross-examination of Mr. Conover,— one of the architects mentioned, and a witness on the part of the plaintiff,— the trial court ruled that the judgment in the lien suit in favor of Grafton Hall was conclusive, not only on the firm of Hinkley & Powers, but also on their sureties, two of the defendants in this action. In pursuance of such ruling, that court struck out all such cross-examination as related to the alleged counterclaim of Hinkley & Powers, and also excluded all evidence as to such counterclaim. The important question here presented is whether the judgment in the lien action is *res adjudicata* upon all the defendants in this

action. That action was brought by Hinkley & Powers on the theory that their contract with *Mr. Grafton* terminated December 1, 1895, by reason of his failure to give written notice on or before October 1, 1895, mentioned, and the complaint alleged two causes of action. The first was that at that time there was due to them from *Mr. Grafton* $1,132.93 for materials furnished and services rendered under the contract, and the second was for a balance of $3,955.45 for services rendered and materials furnished between January 21, 1896, and October 31, 1896,— not under the contract, but for what the same were reasonably worth; and the action was to enforce both claims as a lien upon the building, then and since owned by a corporation known as Grafton Hall. The action was against the corporation alone, and the defense was that all the materials so furnished and all the services so rendered by Hinkley & Powers were under the contract, which they had failed to perform, and hence that they were not entitled to such lien; and the trial court so held, and its judgment was affirmed by this court. *Hinkley v. Grafton Hall*, 101 Wis. 69. Of course, the corporation Grafton Hall merely defended against the enforcement of such claims as liens against the building. Since Grafton Hall was not a party to the contract, it is obvious that Hinkley & Powers could not, and did not attempt to, recover any personal judgment against the corporation for extras, or deficiency, or anything. It is equally obvious that Grafton Hall, in that action, could not and did not attempt to recover from Hinkley & Powers any damages for a breach of the contract to which it was not a party, by way of counterclaim or otherwise. *Mr. Grafton* was not a party to that action, and, of course, any claim he might have had against Hinkley & Powers for damages for the breach of his contract with them could not be determined as against him in that action, and no attempt was made to have the same determined in that action. Since such claim of *Mr. Grafton* for

Grafton vs. Hinkley and others.

such damages could not have been determined in that action, it follows that the liability of Hinkley & Powers and their sureties on the bond could not have been determined in that action. True, the question whether Hinkley & Powers were entitled to a lien on the building depended upon the question whether they had or had not broken their contract with *Mr. Grafton;* and hence the question whether Hinkley & Powers had breached such contract to the extent of defeating such lien was involved in that suit, and the question of such breach is involved in this suit. But we are constrained to hold that such judgment is not conclusive upon the sureties on the bond upon which this action is brought. They were not parties to that action.

At common law a mere surety for the payment of a debt, without any agreement, express or implied, to be bound by a suit between the principal parties, is not concluded by its determination. *Thomas v. Hubbell,* 15 N. Y. 405; *S. C.* 35 N. Y. 120. In that case it was held on the first appeal that "except in cases where, upon the fair construction of the contract, the surety may be held to have undertaken to indemnify his principal against the result of a suit, or when he is made a privy to the suit by notice, an opportunity to defend being given to him, a judgment against the principal is proof against the surety *only of the fact of its recovery*, and not that the facts *in pais* against which the surety agreed to indemnify were established in the litigation." And on the second appeal it was held that " the sureties on a deputy sheriff's bond are not concluded by a recovery against the sheriff, where they have had no opportunity to appear and defend." See, also, *Bridgeport F. & M. Ins. Co. v. Wilson,* 34 N. Y. 275. In this state it has been held " that one not a party, nor in privity with a party, to an action, is not bound by the judgment unless he had not only notice of such action, but also *an opportunity to defend it.*" *Saveland v. Green,* 36 Wis. 612. See, also, *De Greiff v. Wilson,* 30 N. J.

Eq. 435; *Smith v. Milwaukee*, 18 Wis. 369; *Somers v. Schmidt*, 24 Wis. 417, 421; *McCoy v. Quick*, 30 Wis. 521, 527; *Stephens v. Shafer*, 48 Wis. 54. It is true that soon after the commencement of the lien suit the corporation served notice on the sureties of the pendency of the action and their liability for Hinkley & Powers's breach of the bond; but the amount of such liability was not determined in that suit, to which neither they nor *Mr. Grafton* were parties, and they had no opportunity to defend against the same. Had *Mr. Grafton* been made defendant in the lien suit, and interposed a counterclaim for damages by reason of the breach of contract alleged in this action, and the sureties then been notified, a different question would have been presented. Here the condition of the bond sued upon is that if Hinkley & Powers "shall well and faithfully perform all the conditions contracted to be performed by [them] as by the terms of said contract stipulated, without fraud or delay, and shall pay all bills for labor and material incurred therein, then this bond to be void and of no effect; otherwise, to remain in full force and virtue." The rule is different where a surety has contracted with reference to the conduct of one of the parties to a suit or proceeding in court. In such cases it has often been held that the surety is concluded by the judgment against the principal. *Smith v. Lockwood*, 34 Wis. 72; *Shepard v. Pebbles*, 38 Wis. 373, 378; *Kellam v. Toms*, 38 Wis. 592; *Krall v. Libbey*, 53 Wis. 292; *Meyer v. Barth*, 97 Wis. 352; *Roberts v. Weadock*, 98 Wis. 400, 405; *Ingersoll v. Seatoft*, 102 Wis. 476, 480. In such cases the statute, in connection with the contract, contemplates proceeding in court and judgment. Mr. Freeman points out the same distinction, and the great confusion among the adjudications of different states on the subject. 1 Freeman, Judgments, § 180.

Counsel further contend that the sureties were released from liability on the bond by reason of the failure of *Mr.*

*Grafton* to notify them or.Hinkley & Powers, in writing, on or before October 1, 1895, to complete the work on the building.   There is nothing in the contract requiring such notice to be served on the sureties.   In the former case we held that such provision in the contract "was apparently made for the sole benefit of *Mr. Grafton*," and that, as Hinkley & Powers did not exercise their privilege of quitting the job by.reason of such failure to give such notice, and as "*Mr. Grafton* made no objection to their continuing work under the contract," but, on the contrary, " acquiesced in and consented to such continuance," such written notice was waived; and that all services rendered and materials furnished thereafter by Hinkley & Powers were under the contract.  In other words, we held, under the circumstances stated, that the contract continued, and covered the whole job, and was binding upon the parties, the same as though such notice in writing had been given.   In this case it was found by the trial court that such written notice had been waived by Hinkley & Powers, and parol notice accepted by them instead thereof; and that all work and labor done and all materials furnished by them were so done and furnished under the original contract and subject to its limitations, specifications, and conditions, and not otherwise; and that such waiver did not increase, change, or alter the responsibility of the sureties, and in no wise changed the contract nor the liability intended to be entered into and assumed by the sureties when they executed the bond.   Of course, all concede that sureties for the performance of a contract are discharged by any subsequent material change therein. *Sage v. Strong*, 40 Wis. 575; *Nichols v. Palmer*, 48 Wis. 110; *W. W. Kimball Co. v. Baker*, 62 Wis. 526; *Cowdery v. Hahn*, 105 Wis. 455.   In the case at bar there was no material change in the contract.   The liability of the defendants on the bond is predicated wholly on the failure of Hinkley & Powers to perform the contract and pay all

bills as required.   It contains no reference to the termina-
tion of the contract by the failure to give such written no-
tice, nor to any omission to act on the part of *Mr. Grafton.*
In a case in the supreme court of the United States upon a
written guaranty of a contract to furnish machinery, the
contractors had informed the other party of their liability
to complete the work " by the first safe and navigable rise
of the river," as required by the contract; and Mr. Justice
CAMPBELL, speaking for the whole court, said:

" It is clear that the mere prolongation of the term of pay-
ment of the principal debtor, or of the time for the perform-
ance of his duty, will not discharge a surety or guarantor.
There must be another contract substituted for the original
contract, or some alteration in a point so material as, in effect,
to make a new contract without the surety's consent, to pro-
duce that result.  But when the essential features of the con-
tract and its objects are preserved, and the parties, without
objection from the surety, and without any legal constraint
on themselves, mutually accommodate each other, so as better
to arrive at their end, we can find no ground for the surety
to complain." *Benjamin v. Hillard,* 23 How. 149, 165, 166.

Such rulings have been sanctioned by the late decisions
in the federal court. *Harper v. National L. Ins. Co.* 56 Fed.
Rep. 281, 284; *Fertig v. Bartles,* 78 Fed. Rep. 866.   In this
last case it was held that " a surety is not released from his
obligation by the voluntary extension to his principal of a
credit greater than that for which the surety has agreed to
become bound, when no change is made in the terms of the
contract between the principal and his creditor." In a late case
in New York notice was given to terminate a building con-
tract, as therein provided, on the contractor's failure to per-
form.  Soon after, the owner recalled the notice and allowed
the contractor to resume work; and, on a second failure to
perform, the owner took possession as provided by the con-
tract, and it was held that the effort at performance after
the recall of the notice was not to be deemed a new contract,

Grafton vs. Hinkley and others.

so as to relieve the surety of the original contract from subsequent liability, since, under the terms of the contract, such notice did not, of itself, terminate the contract, and the owner had the power to recall it, and the contract was actually terminated *only by the owner's taking possession* on the contractor's final failure to perform. *Smith v. Molleson,* 148 N. Y. 241. In that case it was further held that "when a building contract provides that payments shall be made upon certificates of work done, the fact that payments were made without the certificate does not constitute a change in the position of a surety for the contractor to his prejudice, and so operate his release, when it is manifest that the provision was inserted in the contract for the benefit of the owner alone, and that the payments so made were not greater in amount than they should have been if the certificate had been exacted." See, also, *Ulster Co. S. Inst. v. Young,* 161 N. Y. 23; *New York L. Ins. Co. v. Hamlin,* 100 Wis. 17.

In a recent case this court has held that "a surety for the performance of a contract will be released from liability by a change or alteration of such contract without his consent only when such change is material and substantial." *Stephens v. Elver,* 101 Wis. 392. In that case Mr. Justice BARDEEN quotes approvingly a part of the language of Mr. Justice CAMPBELL above quoted. For other cases see his opinion. 101 Wis. 396–401.

The waiver of the written notice and the acceptance of parol notice in the case at bar did not enlarge or change the liability of the sureties. On the contrary, such liability remained the same as though such written notice had been given. Upon the trial of this case there was, apparently, a misapprehension as to the rights of the parties on both sides.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

DODGE, J.   I fully agree with the decision of the court that the judgment in this case must be reversed for the error of the circuit court in receiving in evidence and treating as *res adjudicata* against the defendants the judgment rendered in an action to which the present plaintiff, *Charles C. Grafton*, was not a party, either in form or by representation.   As such judgment could not estop him, it cannot be invoked as an estoppel in his favor without ignoring the rule that estoppels must be mutual.

I find myself unable, however, to reach the further conclusion of my brethren that the defendant sureties are bound for that portion of the building contract which, according to its terms, was to be performed only after, and upon the condition of, the giving of a written notice by the plaintiff declaring his option to that effect.   The contract, as originally made, absolutely bound Hinkley & Powers to perform certain work amounting to about $14,000.   It provided that they might become bound to perform additional work to the extent of about $16,000 upon the happening of a specified contingency, namely, the giving of a written notice.   This contingency never happened, and therefore I cannot persuade myself that the sureties ever became bound. They had a right to insist on the strict letter of their contract, and neither *Grafton* nor Hinkley & Powers had any right to waive any of its provisions.   Even if it were necessary that the court should discover the materiality of the requirement that Hinkley & Powers should be bound for the additional work only upon the giving of written notice, I think it would not be difficult to do so.   Anything which facilitated Hinkley & Powers in the performance of their contract, or added certainty to their position, was material and beneficial to the sureties.   So long as there did not exist a written notice signed by *Grafton*, the question of his liability for this additional work must depend upon the ability of Hinkley & Powers to prove his assent by parol.

Thus, during a period of many months, while the work was progressing, the position of the contractors with reference to procuring credit was weakened. It depended upon their own assertions that *Grafton* was liable to them, instead of being supported by written evidence of such liability. The sureties had a right to provide in advance that they should not be liable unless this written evidence was furnished, just as they would have had a right to stipulate in a bond that they should become liable only in case a written contract were made between their principal and the owner of the property. In such case I think none would contend that they could be bound to an oral contract.