CHANDLER LUMBER COMPANY, Appellant, vs. RADKE, Respondent.

*September 30—October 20, 1908.*

*Sales: Construction of contract: "Free on board cars:" Principal and surety: Discharge of guarantor: Departure from contract: Materiality.*

1. A contract to deliver lumber "free on board cars" at its destination means that it is to be delivered on board cars at that place, free to be taken by the purchaser without any obstruction, burden, or impediment; and it is not so delivered when, in order to take it into his possession, he must discharge a lien thereon for freight.
2. A surety has the right to determine and specify the exact conditions upon which he will be responsible for the debt of another, and an expression in the contract apparently declaring a condition of such liability will not be ignored unless the court can say with certainty that it is immaterial and that departure therefrom is without prejudice.
3. One who guaranteed payment for lumber to be delivered "free on board cars" at its destination, with sixty days' credit, to a contractor almost wholly without means of his own, was discharged from liability by the vendor's requiring the vendee to pay the freight (amounting to seven per cent. of the price) before he could take the lumber, although such payment was credited on the purchase price. KERWIN, TIMLIN, and MARSHALL, JJ., dissent.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Plaintiff, lumber dealer in Chicago, on July 17, 1906, had agreed upon a sale of two bills of lumber, specified in detail for two houses, for which one H. Schutte, a builder, had taken contract, amounting to $2,160, and before shipment thereof the defendant executed a guaranty in part as follows:

"I guarantee the payment of the above amount to you for lumber and building material purchased of you by Mr. H. Schutte to be delivered free on board cars, Madison, Wis., as per your estimates number 2113 and 2134 dated July 8th

and 17th, 1906; payment to be made within sixty days after date of invoice, provided same is found as specified in your estimates above referred to."

Schutte was without capital, but had worked for defendant, who had confidence in him. Plaintiff promptly commenced shipping such lumber in carload lots; said cars being shipped so that it was to be delivered to Schutte only upon his payment of the freight, for which he was allowed credit by the plaintiff. Afterward Schutte, having obtained other contracts, commenced ordering the lumber therefor also from the plaintiff, and thereafter carload shipments were made containing both the lumber on the first two estimates guaranteed by defendant and on other orders. The latter part of October Schutte absconded. The plaintiff's representative, who had made the sales and had full charge of the dealings and collections from Schutte, came to Madison, found a quantity of lumber stored by Schutte in a vacant building, and seized and returned the same to Chicago. This action was brought to recover from the defendant the entire sum of the first two estimates, $2,160.

The defenses were, first, that by shipping to Schutte subject to the freight bills, whereby he had been compelled to pay sums amounting to over $150 before he could obtain the lumber, the plaintiff had materially departed from and modified the contract and discharged the guarantor; second, that by the seizure and recaption of a part of the lumber which had been delivered under this guaranty plaintiff had deprived Schutte and the defendant of the benefit which would have resulted from completed performance of the contract, and therefore discharged the defendant as guarantor. Also that plaintiff had received as payment upon said guaranteed debt the $1,500, the freight advances of $153, and the value of the lumber so reclaimed after Schutte's disappearance.

The action was tried to a jury and a special verdict rendered to the following effect: (1) That plaintiff did not in-

form the defendant of any custom that the purchaser should pay and have credit for freight on lumber shipped f. o. b. Madison; (2) that plaintiff did apply $1,500 payment upon the two estimates guaranteed by the defendant; (3) that the value of the lumber from the guaranteed shipments which plaintiff took back was $150; (4) that defendant did not consent that such lumber be taken. This verdict was assailed by all necessary motions to raise the questions discussed on this appeal, but the court held thereon that, by imposition of the conceded burden of freight before the lumber could be received by Schutte from the railroad company, the contract had been materially modified and defendant discharged from his guaranty; also that by the recaption of lumber which had been delivered and was needed to build the buildings specified in the estimates, the contract had been modified to the hurt of the defendant and he discharged. Accordingly judgment was rendered for the defendant, from which the plaintiff appeals.

For the appellant there were briefs by *Bashford, Aylward & Spensley,* and oral argument by *R. M. Bashford.*

For the respondent there was a brief by *Gilbert, Jackson & Ela,* and oral argument by *Russell Jackson.*

The following opinion was filed October 20, 1908:

DODGE, J.  Error is assigned upon the holding of the trial court that the shipping of the lumber so that the purchaser, Schutte, could not obtain it at Madison except by paying the freight charges thereon was a departure from the terms of the contract, and evidence was offered to prove a custom to so ship lumber even under a contract for its delivery free on board at its place of destination. The court's ruling in this respect must be approved. The expression "free on board" in a contract like this is not ambiguous and therefore not open to construction either by proof of custom or otherwise. *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820;

*Fromme v. O'Donnell,* 124 Wis. 529, 532, 103 N. W. 3. "Free on board cars, Madison," means that the plaintiff, in order to perform its contract, must deliver the lumber on board cars at Madison, Wisconsin, free to be taken by the purchaser without any obstruction, burden, or impediment. It is not so delivered when, in order to take it into his possession, he must discharge a lien thereon for freight.

But appellant further contends that, even though this were a departure from the terms of the contract, the surety is not thereby discharged, for that the variation was not prejudicial to him, since Schutte received credit for the amount of freight which he paid and thereby reduced the indebtedness for which the defendant as surety was liable. It is elementary that a surety is favored in the law. As he ordinarily does not receive the benefit of the contract, but is a mere volunteer, he has a right to define exactly the conditions upon which he shall be responsible for the debt of another, and only upon compliance with those conditions can he be held to such liability. 1 Brandt, Suretyship (3d ed.) § 427; *W. W. Kimball Co. v. Baker,* 62 Wis. 526, 22 N. W. 730; *Stephens v. Elver,* 101 Wis. 392, 77 N. W. 737; *Cowdery v. Hähn,* 105 Wis. 455, 81 N. W. 882; *Electric A. Co. v. U. S. F. & G. Co.* 110 Wis. 434, 85 N. W. 648; *Omaha Nat. Bank v. Johnson,* 111 Wis. 372, 87 N. W. 237; *Charley v. Potthoff,* 118 Wis. 258, 265, 95 N. W. 124. While this rule was originally enforced with entire strictness, it is now subject to certain exceptions, among which the only one claimed to be relevant to the present situation is set forth in *Stephens v. Elver, supra,* namely, if the variation appear to be wholly immaterial and without prejudice to the surety's rights it will be ignored. Of course the principle remains that the surety may determine and specify the exact terms upon which he will be liable and has a right to stand upon those terms, and it is only when a court is able to say with certainty that an expression in the contract apparently de-

claring a condition of such liability is so immaterial to him
and departure therefrom so necessarily without prejudice
that it cannot believe in an intention of the parties to ex-
press it as a condition of liability does the above noted excep-
tion apply. In the instant case, while the reduction of
Schutte's indebtedness by the amount of the freight prob-
ably would be beneficial rather than injurious to the defend-
ant under most circumstances, yet, when we remember that
it was made to appear that Schutte was engaging in the busi-
ness of a building contractor almost wholly without means
of his own, and his ability to pay for the materials and labor
in any given piece of work depended upon his completion
thereof and consequent receipt of the contract price, which,
as we know, is usually in large part withheld pending such
completion, it becomes apparent that any obstacle placed in
the way of speedy completion enhanced the danger of his
becoming involved by pressing indebtedness and the inter-
ruption of his work by creditors. It cannot be doubted,
therefore, that the provision for sixty days' credit upon the
lumber which entered into these two building contracts,
amounting to about $2,000, was of the greatest importance
in promoting the probability of his success and consequent
ability to meet debts. To that end, even a small amount of
cash might be very important, and the deprivation thereof
seriously prejudicial. The $150 which he was obliged to
pay in cash in order to obtain these materials might well
have enabled the hiring of labor or the purchase of such ma-
terials as he could not obtain upon credit and which were
necessary to the completion of the work. We are therefore
brought to substantial agreement with the trial court on the
proposition that the requirement that Schutte pay about
seven per cent. of the price of this lumber in cash instead of
upon a credit of sixty days was a departure from the terms
of the contract which we cannot say with any degree of cer-
tainty was immaterial or without prejudice to the surety.

If Schutte, as appears to have been the case, assented to this modification, the contract was changed without the consent or approval of the surety. If he did not consent, the plaintiff has failed in the performance of its contract in a respect material to the surety's promise, which in either case is not enforceable. *W. W. Kimball Co. v. Baker,* 62 Wis. 526, 531, 22 N. W. 730; *Charley v. Polthoff, supra; Walrath v. Thompson,* 6 Hill, 540.

As this conclusion must result in affirmance of the judgment, no discussion of the sufficiency of the other grounds upon which it rests need be indulged.

*By the Court.*—Judgment affirmed.

The following opinion was filed November 11, 1908:

KERWIN, J. (*dissenting*). I cannot agree with the majority opinion that the payment of freight changed the contract in any material particular. The amount of freight paid was simply an advancement of a portion of the purchase price before the same became due, and was credited upon the contract. While Schutte was not required to pay any portion of the purchase price before due, still the payment of the freight, which was credited upon the purchase price and decreased to that extent the obligation of the surety, cannot, in my opinion, be held a material alteration of the contract, unless it can be said to have prejudiced the surety. There is nothing in the record tending in the least to show that it did, and therefore I cannot see that such payment discharged the surety. *Stephens v. Elver,* 101 Wis. 392, 77 N. W. 737; *Madison v. Am. S. E. Co.* 118 Wis. 480, 95 N. W. 1097; *Grafton v. Hinkley,* 111 Wis. 46, 86 N. W. 859, and cases there cited; *Rice v. Filene,* 6 Allen, 230; *Groendyke v. Musgrave,* 123 Iowa, 535, 99 N. W. 144; *Feustmann v. Estate of Gott,* 65 Mich. 592, 32 N. W. 869; Stearns, Suretyship, § 72; 1 Brandt, Suretyship (3d ed.) §§ 428, 445.

The sixty days' credit upon the whole amount of the pur-
chase was in this case for the benefit of Schutte, and the
waiver of it to the extent of the amount of freight advanced
did not prejudice the surety, as appears from the record;
and, this being so, there was no material alteration of the
contract. I do not think the case before us is one where the
principals to the contract, without the consent of the surety,
changed the terms of the credit to the prejudice of the surety
in the sense of the cases laying down that rule. Nor do I
think there was any breach of the contract, but, even if there
was a technical breach, it was without prejudice to the surety,
and therefore wholly immaterial.

I think the judgment below should be reversed.

TIMLIN and MARSHALL, JJ. We concur in the foregoing
dissenting opinion of Mr. Justice KERWIN.