ESTATE OF OEFLEIN : CHRIS. SCHROEDER & SON COMPANY, Respondent, vs. OEFLEIN, Executor, Appellant.

*October 12—November 9, 1932.*

388

390

For the appellant there were briefs by *Olwell & Brady* and *William T. Gill,* all of Milwaukee, and oral argument by *Mr. Gill* and *Mr. Bernard T. Brady.*

For the respondent there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

FOWLER, J. The recital clause of the contract of guaranty referred to in the statement of facts, and the only clause in the contract containing any words of guaranty, is as follows:

"Whereas second party (the company) is unwilling to take on said bond issues and handle the same unless third parties (Walter W. Oeflein, Robert A. Messmer, and Walter Schroeder) will personally, to the extent of one-third each, guarantee second party the performance by first party (Mastopietro) or his assigns, of all the terms of said bonds and trust mortgages so to be executed by him to second party, which said performance third parties are willing to guarantee upon the terms hereinafter mentioned and set forth;" . . .

It is the contention of the claimant, and the trial court found, that the clause in the guaranty contract above quoted made the guarantors absolutely responsible for the payments made by the claimant to cover the defaults of Mastopietro during the first two years after the date of the bonds. The appellant claims that the guaranty was subject to a condition precedent and that absolute liability of the guarantors did not attach until or unless Mastopietro formed the corporation and put up his stock in accordance with the "terms" set forth in the contract of guaranty to secure them against loss through his defaults.

The natural import of the language "which said performance the third parties (guarantors) are willing to guarantee upon the *terms hereinafter set forth*" would seem to be that the guarantors were willing to and would guarantee the payments if or on condition that the provision contemplated for securing them against loss was carried out, which was the putting up of Mastopietro's stock as collateral security for delivery to them upon his default which would have made them the absolute owners of the stock in case he should re-

main in default for four months, and would have given them absolute control of the property and afforded them means to so handle or dispose of it, if able, as to protect them from loss. The meaning is that the company was willing to make the loan upon a guaranty by the guarantors that Mastopietro would make the payments specified in the contract, and the guarantors were willing to give the guaranty if the things were done that were specified in the contract for their protection. The clause quoted implies that the company offered to make the loan if the three persons would guarantee Mastopietro's payments for two years, and that the three persons made a counter-offer to give the guaranty providing certain things were done for their protection. The company by signing the contract accepted the counter-offer. The three persons made a qualified acceptance of the company's offer, and the company accepted the qualified acceptance. From this it follows that liability of the guarantors would not attach until or unless the things were done which were to be done for their protection. The meaning of the phrase "upon terms" as commonly used in judicial proceedings lends support to this construction. If a party in default is permitted to file a pleading "upon terms," the meaning is that he may not file it until the "terms" are complied with, or he may do it upon condition that the terms are complied with. The case of *Chandler L. Co. v. Radke,* 136 Wis. 495, 118 N. W. 185, also lends support to this construction. In that case there was involved a guaranty as follows:

"I guarantee the payment of the above amount to you for lumber and building material purchased of you by S. to be delivered free on board cars at Madison."

This is manifestly equivalent to guaranteeing payment "upon the following terms, viz.: Delivery to be f. o. b. Madison." It was held that "delivery f. o. b. Madison" was a condition precedent, and that as the carrier required payment of freight by the purchaser before permitting him to take the

goods carried, liability of the guarantor did not attach. It appears to us that precisely the same reason exists here for holding the performance of the terms of the contract a condition precedent that existed in the case cited. It is stated in the opinion in that case, p. 498:

. . . "The surety has a right to define exactly the conditions upon which he shall be responsible for the debt of another, and only upon compliance with those conditions can he be held to such liability."

The construction contended for by respondent would give to the clause quoted precisely the same meaning of absolute liability that it would have if it ended with the clause "which said performance third parties are willing to guarantee." This disregards entirely, as of no meaning or import whatsoever, the phrase "upon the terms hereinafter set forth." It is fundamental that in construing a contract the whole of it must be considered and all parts of it must be given effect if it is possible to do so. Just as the whole contract had to be considered to determine what payments were the subject of the guaranty, just so all of it must be considered to determine upon what "terms" the guaranty depended. The words of the guaranty itself are broad enough to cover the entire bond issue. The respondent concedes that other clauses of the contract limit the guaranty as to payment. Just so other clauses limit the obligation of the guarantors by showing the terms on which—the conditions upon which—the guaranty was given.

The respondent contends that the provision of the contract in respect to Mastopietro's forming a corporation and putting up his stock therein as collateral security to protect the guarantors against loss under their guaranty is not a condition at all but only a stipulation or agreement, basing its contention for the most part upon the fact that it is not expressly denominated a condition. But it is not necessary to constitute a condition that it be expressed as such. It was not

so expressed in *Chandler L. Co. v. Radke, supra.* The doing of a thing

"may operate as a condition because the parties intended that it should, such intention being reasonably inferable from conduct other than words. It is then a condition implied in fact. . . . In its proper sense the word 'condition' (in the law of contracts) means some operative fact subsequent to acceptance and prior to discharge, a fact upon which the rights and duties of the parties depend. Such a fact may be an act of one of the two contracting parties or the act of a third party, or any other fact." . . . 28 Yale Law Journal, pp. 743, 744.

"Whether a given stipulation is to be deemed a 'condition precedent,' a 'condition subsequent,' or an 'independent agreement' is purely a question of intent; and the intention must be determined by considering, not only the words of the particular clause, but also the language of the whole contract, as well as the nature of the act required and the subject matter to which it relates." *Skowhegan Water Co. v. Skowhegan Village Corp.* 102 Me. 323, 66 Atl. 714.

We are of opinion that so viewing the contract of guaranty, the guaranty involved must be construed as conditional on the things being done by Mastopietro that were required to be done by him for the protection of the guarantors.

It is urged that the guarantors knew that Mastopietro did not perform his part of the contract, and that by going on with the project they waived the conditions on which their guaranty was to become operative. They doubtless took their chances of getting the stock that was to constitute part payment of their contracts, and waived payment so far as it was to be made in stock. But this is the extent of their waiver. Waiver is the voluntary relinquishment of a known right. The guarantors are presumed to have known from the contract itself the terms upon which their promise to pay would become operative. There is no evidence that they intended to relinquish any rights under the provisions of the contract

inserted to protect them from loss, and no evidence to warrant inference of any such intent.

It is urged by the respondent that if the construction it contends for is not the only one to which the contract is susceptible, that construction should be given to it which is most favorable to the company because the company advanced the money on reliance upon the guaranty. If it be conceded that the contract is ambiguous, this does not follow. A contract of suretyship is to be construed, in case of ambiguity, in favor of the surety, rather than in favor of the creditor, if favor enters into the matter at all. This is the rule except when the surety executes the contract for a premium paid or other consideration. It is suggested that the guarantors expected to profit from carrying out the project and that this constituted a consideration which brings the contract within the exception to the rule. Not so. The expectation of profit existed when the guarantors refused to give the guaranty unless provisions for their protection were made and they refused to give the guaranty in consideration of that expectation. The company also expected to profit from carrying out of the project. It got the first-mortgage bonds at a discount of six per cent. and the second at a discount of ten per cent., and got them with the expectation of selling them and did sell all but $10,300 of the first mortgage and $12,500 of the second-mortgage bonds. It is true that the company would not make the loan unless the guaranty were given, but it is also true that the guarantors would not give the guaranty in consideration of their chance of profit. Chance of profit was not more a consideration for their guaranty than chance of profit was the consideration for the company's making the loan. The parties stand on precisely the same footing respecting expected profits, except that the company's expectations in this respect doubtless far exceeded those of the guarantors. Moreover, it was Oeflein Inc., if anybody, that

was to profit from the building contract, not Walter W. Oeflein, the guarantor. The latter's interest in Oeflein Inc. is not shown. It thus does not appear from the record that he was to profit at all, or that he stood on any different footing from that of a voluntary surety in an ordinary business transaction.

It is urged that the company had no means of compelling Mastopietro to form the corporation because it was not a party to the contract containing the provision requiring him to form it, and that the company would not have made his performance a condition of the guarantor's liability when it had no means of compelling him to perform. The premise is not correct, and if it were the conclusion would not follow. There were other means than action for specific performance to compel Mastopietro to perform and such means were in the company's hands. It could have refused to advance any money, or any further money at any time, unless he performed, and could thus more promptly and effectively have compelled performance than by court action, assuming court action would have lain. It appears that Mastopietro's failure to form the corporation was solely due to his lack of funds to pay the expenses incident to the formation. The company could have advanced funds for this purpose out of the funds held by the company to meet the expenses of carrying out the project as they were incurred. This would have been as well within those expenses as any other items paid by the company.

*By the Court.*—The judgment of the county court is reversed, with directions to enter judgment dismissing the claim.