CHARLEY, Respondent, vs. POTTHOFF and another, Appellants.

*May 11—May 29, 1903.*

*Contracts: Theatrical performances: Breach: Evidence: Court and jury: Direction of verdict: Election of remedies: Rescission: Waiver: Guaranty: Principal and surety: Material alterations of contract: Res gestæ.*

1. In an action by the manager of an opera company to recover the balance of compensation agreed to be paid by defendant for three performances by the company, wherein defendant set up the defense that the performances failed to comply with the contract, the evidence (stated in the opinion) examined, and *held* to raise an issue of fact wherein reasonable minds might differ, and it was therefore error to direct a verdict for plaintiff.

2. One party to a contract may accept and pay for that which is delivered to him as in performance of the contract, without in any wise impairing his right to redress, if performance is not in compliance with the contract.

3. In such case, the injured party may elect to rescind, return what is received, if that be possible, and recover back the contract price paid, and defend against claim for any not paid; or he may retain·what is furnished and sue for the damages occasioned to him by any defects, either in an original action, or by setoff, or counterclaim against a suit for the contract price. This is specially true where the recipient of the performance or contracted article is so situated that he cannot forego its use without serious disturbance or injury.

4. Plaintiff contracted with defendant P. to furnish the full acting company of "Charleys' Grand French Opera Company," consisting of thirteen enumerated actors, and an orchestra of thirty-two musicians "who accompany the said production." Relying thereon P. rented a theater, and collected considerable sums subscribed for advance sales of sittings, which P. spent in advertising. Two of the actors and twelve of the orchestra were not furnished; the operas were rendered in a manner unpleasant and unsatisfactory to the general public, and thereby the box-office receipts were greatly diminished. P. paid part of the contract price, and the last night turned over to plaintiff the entire box-office receipts to apply on the contract price. Action being brought for the unpaid contract price, P. alleged such defective performances as a defense, and counterclaimed for damages on the same grounds. *Held*, that it was error to take the case from the jury on the ground that, by making partial payments, P. waived any breach and thereby accepted the contract commodity.

5. Where a theatrical performance was not of the standard required by the contract, it is not necessary for the person contracting for such performance to make complaint after the same had been given and received by him in ignorance of defects, nor would payment of money upon, or even in full of, the agreed consideration for the performance, debar him from recovering or setting off the damages suffered by him by reason of the defects.

6. The rule that one who accepts goods known to be tendered as satisfying a contract will be deemed to have waived defects known to him, or which would be apparent to one exercising ordinary care, unless he objects within a reasonable time, has no application to the acceptance of a performance by a theatrical company where, at the time of the acts on which the acceptance is predicated, the performance had been given, and the contractee had on his hands a theater already specially rented, a specially invited audience, and the proceeds of advance sales of tickets invested in advertising.

7. In an action against a manager of a theater and a surety to recover the unpaid price of a theatrical performance, a verdict was directed for the plaintiff. It appeared, among other things, that all parties contemplated that the box-office receipts were the primary fund from which payment was to be made. *Held*, that while the manager might accept a performance inferior to that required by the contract, and thereby make himself liable to pay the contract price, such action would not justify a judgment against the surety.

8. In an action to recover the contract price for a theatrical performance, the defense was non-compliance with the provisions of the contract as to the merits of the performance. *Held*, that declarations of patrons, at the very moment of leaving the theater, of their reasons for so doing, are admissible as *res gestæ*.

APPEALS from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

Plaintiff, being the manager of a French opera company, on March, 1900, entered into a written agreement with the defendant *Potthoff* to give three performances at the Pabst Theater, Milwaukee, to furnish "the full acting company of Charley's Grand French Opera Co. from New Orleans. The said company composed, among others, of the following named artists, to wit [naming thirteen persons], etc., capable of producing the following named operas: Les Huguenots, Romeo and Juliette, La Juive, and other operas also. His corps of ballet with three principal dances, and the requisite costumes, scenery, etc., required in the production of said operas; also an orchestra of thirty-two (32) musicians, who accompany the said production." *Potthoff* agreed to pay therefor $5,000, viz., $1,000 at the conclusion of the first performance, $2,000 at the conclusion of the second performance, and the balance of $2,000 at the conclusion of the second act of the third performance. The appellant *Coates* executed a guaranty or bond, in which he guaranteed unto the plaintiff "the full and faithful performance of said contract by said *Potthoff* promptly according to the terms and conditions thereof." The company was produced at the dates named, and gave three performances, which are claimed by the defendants to have failed of compliance with the contract, in that they were defective, not characterized by reasonable or proper skill or artistic merit, and that they did not include certain artists, nor the full acting or orchestral force of the company, from which resulted public dissatisfaction, loss of

box-office receipts, etc., to the damage of the defendant *Pott-hoff*, who, however, paid the $1,000 at the close of the first performance, a second $1,000 at the close of the second performance, and at the close of the second act of the third performance allowed the whole proceeds of the box-office, after deducting other expenses, to be paid over, amounting to about $800. The action is brought to recover the balance of the $5,000, or $2,187.50. Defendant *Potthoff* alleges the defective performance as defense, and also counterclaims on the same grounds for $2,000 damages. At the close of the evidence, without passing upon the alleged breaches of contract on the part of the plaintiff, the court directed a verdict upon the ground that the defendant *Potthoff*, by making the payments aforesaid, had accepted the performance as satisfying the contract, and had waived any defects therein. Judgment being entered upon such verdict, the defendants appeal separately.

For the appellants there was a brief by *Charles Friend* and oral argument by *Arthur S. Friend* and *M. M. Riley*.

For the respondent there was a brief by *Turner, Pease & Turner*, and oral argument by *L. S. Pease*.

DODGE, J. The respondent seeks to justify the action of the trial court in directing a verdict by the contention that there was no evidence that the performances supplied by plaintiff were not in full accord with the contract. He asserts that testimony of persons attending such performances is no evidence of the insufficiency of the service, for the reason that such witnesses had no standard of comparison; the only proper standard, according to his contention, being that of the performances ordinarily given by this particular company. We shall not devote time to a consideration of this last proposition. Suffice it to say that an examination of the record discloses evidence of insufficient and defective performance as measured by any conceivable standard—whether that of opera

companies generally, of French opera companies, of traveling
opera companies, of the French opera companies usually man-
aged by this same plaintiff, and that of this particular com-
pany as it gave its performances at other places.   Besides
which there is evidence of failure in the respects specifically
required by the written contract, notably in the nonappear-
ance of two of the special artists contracted for, and in the
furnishing of a less number of trained musicians in the or-
chestra.   There is also abundant evidence that by reason of
these omissions, especially that of the orchestra, the perform-
ance was rendered unpleasant and unsatisfactory to the gen-
eral public, with the resulting effect of diminished attendance
and box-office receipts.   True, there is evidence in conflict
therewith, and evidence tending to excuse some of these spe-
cific omissions, but the only result thereof was to raise an
issue, where, to say the best for the plaintiff, reasonable minds
might differ, and which, therefore, was properly for the jury.

Respondent next contends that the action of the court was
justified by an agreement made during the last of the three
performances, before the completion thereof, which he as-
serts was a promise by defendant *Potthoff* to pay at some
future time the unsatisfied balance of the $5,000 of contract
price.   The court did not put its action on the ground of such
a promise, and upon examination we find no sufficient evi-
dence thereof; the burden to prove such agreement or promise
being clearly upon the plaintiff.   The testimony of the at-
torney who drew the paper claimed to contain this promise
is quite as consistent with its being merely a recognition that
the amount then paid was not intended in full satisfaction,
but merely as a payment upon account of the entire contract
price.   The only other evidence on the subject is that of the
defendant *Potthoff,* who says he cannot remember what such
document did contain.   Certainly such proof was not suffi-
cient to conclusively lift the burden, and take the question
of the making of any such promise away from the jury.   The

ground upon which, apparently, the trial court did assume to withdraw the case from the jury was "that the defendants waived any breach of the contract by paying under the contract, taking receipts pursuant to the contract for money paid in pursuance of the contract; the whole testimony shows undisputably that the defendants accepted the company and the performance as represented." Probably no rule of law is more fully settled than that one may accept and pay for that which is delivered to him as in performance of a contract without in any wise impairing his right to redress if the performance is not in compliance with the contract. In such case his remedy is usually alternative. He may elect to rescind, return what is received, if that be possible, and recover back any of the contract price paid, and defend against claim for any not paid; or he may retain what is furnished and sue for the damages occasioned him by any defects, either in an original action or by setoff or counterclaim against a suit for the contract price. *Ketchum v. Wells,* 19 Wis. 25; *Schweickhart v. Stuewe,* 71 Wis. 7, 36 N. W. C05; *Park v. Richardson & B. Co.* 81 Wis. 399, 403, 51 N. W. 572; *Larson v. Aultman & T. Co.* 86 Wis. 281, 290, 56 N. W. 915; *Parry Mfg. Co. v. Tobin,* 106 Wis. 286, 82 N. W. 154; *Waupaca E. L. & R. Co. v. Milwaukee E. R. & L. Co.* 112 Wis. 469, 473, 88 N. W. 308. This rule is of special application where the recipient of the performance or contracted article is so situated that he cannot forego its use without serious disturbance and injury; as in the *Ketchum Case,* involving stave bolts, which the purchaser must keep and use or interrupt the whole business of his mill. The case in hand probably presents no opportunity for *Potthoff* to have rescinded under his alternative right above stated. A song that is sung cannot well be delivered back, to the re-establishment of the *status quo* of either singer or audience. There is, however, no such obstacle to the exercise of the other of defendant's elective rights, namely, to recover or set off the damages suffered by him by

reason of defects in the article supplied under this contract. To that end it was not necessary for him to make complaints after the goods had been delivered to and received by him in ignorance of such defects; nor would payment of money upon, or even in full of, the purchase price debar him, especially if paid under threats of conduct which might cause him great injury, as evidence tended to prove. We are not unmindful of the rule that one who accepts goods known to be tendered as satisfying a contract or warranty will be deemed to have waived defects therein which are then known to him, or of which he could not escape knowledge save by failing to observe that which would be apparent to one exercising ordinary care, unless he objects then or within a reasonable time. *Locke v. Williamson,* 40 Wis. 377; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 92 N. W. 246; *Northern S. Co. v. Wangard,* 117 Wis. 624, 94 N. W. 785. That rule can have no application to the situation here, however, for at the time of the acts on which the court predicated waiver and acceptance the contract commodity had already been delivered to *Potthoff,* and was on his hands, and he was in the predicament of having a rented theater also on his hands and an audience invited, some of whom had already paid their money, which he had spent in advertising. He must use that company or shut up the theater and pay back the subscription money. For another reason, also, this last rule could not justify the court's conclusion, namely, because the proof is by no means conclusive that *Potthoff* knew, or by ordinarily careful observation should have known, of the defects and deficiencies in the company and performance tendered him at the time of its acceptance, or even at the time of making payments. Even if he was aware that the performance was not as pleasurable as expected, he may well have been ignorant of the reasons. The insufficiency of the orchestration may or may not have been noticeable by him; but, even if it were, he may not have known that instead of thirty-two regular trained accompanists

there were but twenty-four; or, even if he knew that, he might still be ignorant that the musicians picked up in Milwaukee had never been given the opportunity of a rehearsal. In several other respects, also, the evidence lacks conclusiveness as to his knowledge or means of knowledge of the specific breaches of the plaintiff's contract.· We need not extend this opinion to discuss them in detail, for we have said enough already to make obvious that the court erred in taking the case from the jury, whether on the ground of waiver and acceptance, as stated by him, or on any of the other grounds now urged by the respondent.

Even if *Potthoff* might have become liable by acceptance of an inferior company and performance and waiver of some part of plaintiff's contract duty, that could not justify verdict or judgment against the surety, *Coates;* certainly if the failure of performance were in any degree material to his liability. The surety is entitled to stand upon the strict terms of his contract, and cannot be held liable otherwise. *W. W. Kimball Co. v. Baker,* 62 Wis. 526, 22 N. W. 730; *Stephens v. Elver,* 101 Wis. 392, 77 N. W. 737. *Coates* bound himself to guaranty payment by *Potthoff* only on condition that the plaintiff performed his part of the agreement. It is apparent that all parties contemplated that the box-office receipts were the primary fund from which payment would be made. Anything which might tend to diminish those receipts impaired *Potthoff's* ability to meet his engagements, and enhanced the liability of the surety. That a poor performance would probably deter attendance is too plain for debate. Therefore defects such as the evidence tended to prove were material to the surety. *Potthoff* might for himself consent to accept an insufficient or an untrained orchestra different from that specified in the contract, either expressly or by acts of waiver; but he could not thereby impose on *Coates* a liability to which the latter had not bound himself. Hence, even in the view which the trial court took of the evidence and of the legal

effects of *Potthoff's* conduct in failing to object and in making payments, the direction of verdict against appellant *Coates* was erroneous.

One rejected offer of evidence must be noticed because of its probable materiality upon another trial. It having appeared that large numbers of the audience left the theater during one of the performances, a witness was asked what he heard any of them say as to their reason for doing so. If the fact of such departure was material—as it doubtless was—the reason was much more so. It would not seriously reflect on the quality of the performance if people left because of a gathering storm, or because the theater was too cold for comfort. It might have that effect if done because the conduct of the performers was unseemly, or their acting or singing bad. We can conceive of no clearer case of admissibility of statements as *res gestæ,* characterizing the act done, than declarations of people, in the very moment of leaving a theater, of their reasons for so doing. The evidence should have been admitted. *Mack v. State,* 48 Wis. 271, 4 N. W. 449; *Bliss v. State,* 117 Wis. 596, 94 N. W. 325.

For the reasons stated, the judgment must be reversed upon the appeal of each of the defendants, who, however, will be entitled to but a single bill of costs, they both having appeared by the same counsel and joined in the same case and brief.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.