FUN-N-FISH, INC., Appellant, v. PARKER and another, Respondents.

*April 7—May 3, 1960.*

For the appellant there was a brief and oral argument by *Jack A. Berland* of Milwaukee.

For the respondents there was a brief by *Hooker & Kaminski* of Waupun, and oral argument by *E. W. Hooker*.

MARTIN, C. J.    It is alleged in the complaint that defendants were the "owners, operators, and vendors" of the premises involved, "including the land, improvements, personalty, and the hotel, tavern, restaurant, boat-rental, and resort business conducted thereon under the name of Parker's Resort."

Sometime prior to March 21, 1958, while negotiations were being carried on for the sale of the resort, plaintiff entered into the use and occupancy of said premises under a stipulation confirmed by letter of said date. On March 21, 1958, plaintiff made a written offer to purchase the property for $20,000, which offer was accepted by defendants on

March 24, 1958. The offer made a tender of $2,000 and provided for payment of the balance on a land contract. It contained an inventory of fixtures and equipment included in the purchase price and various provisions regarding other matters not material here. An indorsement attached to page 2 of the printed form provided that the seller shall not engage in a similar business within a radius of 25 miles within five years; that the seller shall furnish to the buyer, at the time of closing, a bill of sale to the fixtures and equipment, etc., buyer to give a chattel mortgage thereon; that a survey in the possession of seller shall be delivered to the buyer; that—

"The offer to purchase is subject to and contingent upon the buyer obtaining any and all licenses necessary for the full operation of said business premises."

And the offer further stated:

"No representations other than those expressed herein either oral or written are a part of this sale."

On April 17, 1958, prior to the issuance of any licenses for the conduct of the businesses on the premises, the parties duly executed a land contract, a bill of sale of the personal property, and a chattel mortgage of the personalty.

In paragraph 6 of the complaint it is alleged that defendants, in order to induce plaintiff to enter into the purchase agreement, falsely and fraudulently and with intent to deceive and defraud the plaintiff, represented:

". . . that they had had no difficulties with the proper authorities in obtaining all necessary licenses to fully operate the businesses on said premises, and that, on one occasion, had even slept forty-two (42) persons overnight; that a fire escape was not necessary for the use of the rooms on the second floor for sleeping, and that the premises were in condition for immediate opening of all businesses conducted thereon in the past, . . ."

It is alleged that defendants knew such representations to be false; that plaintiff relied thereon and was induced thereby to enter into the agreement for the purchase of the premises.

On April 3, 1958, plaintiff made application for the necessary licenses to conduct the hotel, tavern, and restaurant businesses on the premises. On April 19, 1958, licenses were issued to plaintiff to operate the tavern and restaurant businesses but a hotel license was denied until a fire escape was erected for the safety of guests using the upstairs sleeping rooms and other extensive changes, repairs, and improvements were made. Plaintiff informed defendants thereof and made demand for their compliance with the rules and regulations of the state board of health necessary for the issuance of the said license or for credit on the purchase price of the land contract of the amount necessary to make the required changes, repairs, and improvements. Defendants refused and plaintiff made the said improvements, incurring expenditures therefor in the sum of $2,479.92. Thereafter the state board of health issued the hotel license.

It is further alleged that plaintiff sustained a loss of room-rental income in amount of $2,795 by reason of its inability to obtain the license while the improvements were being made, and a further loss of tavern, restaurant, and boat-rental income in amount of $1,950 by reason of its inability to provide housing facilities to its patrons.

The complaint purports to state a cause of action based on fraud. Paragraphs 6 and 7 allege, in effect, that defendants fraudulently represented that the premises as they existed prior to the offer to purchase met all the requirements for a hotel license, that the plaintiff relied thereon and was induced thereby to enter into the agreement. Such allegations are contrary to the statement in the offer to purchase that no representations other than those expressed in the offer were a part of the sale.

The complaint shows there was in fact no reliance on the representation that the premises conformed to the requirements for a hotel license. The offer to purchase stated that it was "subject to and contingent upon the buyer obtaining any and all licenses necessary for the full operation of said business premises." This clearly indicates that the plaintiff knew there was a question whether the desired licenses could be obtained, protecting itself in event they could not be.

In the twenty-seven days which followed before the land contract was entered into, plaintiff had ample time to investigate the legal requirements for a hotel license. On April 3d it applied for the licenses, but before it ascertained whether or not the licenses would be issued, it entered into the land contract, thus abandoning its rights of cancellation under the offer and acceptance. The land contract contained no reservation that it should be void unless plaintiff obtained its licenses, although the other provisions contained in the indorsement to the offer and acceptance were made a part of the final contract.

The offer to purchase contained the following clause:

"The offer to purchase is subject to and contingent upon the buyer obtaining any and all licenses necessary for the full operation of said business premises."

By this clause the plaintiff had the right to have the contract set aside if it failed to obtain the necessary licenses. However, it elected to abandon this clause and bring this action for damages for fraud. In other words, it wants to avail itself of the clause quoted to establish the fraud, but to discard it as to the remedy sought. It wants to keep the benefits of its purchase and sue for damages. The contract clause, if abandoned for one purpose, must be abandoned for other purposes. Plaintiff reserved to itself only the right

not to go through with the offer to purchase. But by electing to purchase and assuming control before ascertaining whether or not the licenses would be issued, it waived the condition as to obtaining the licenses. Plaintiff cannot now stand on it and ask for relief. See 17 Callaghan's Wisconsin Dig., Waiver, p. 140. The very provision of the offer-to-purchase agreement upon which plaintiff relies does not entitle it to damages. It provides only that the offer shall be void if the licenses cannot be obtained. This is the only remedy which it reserved and the complaint seeks no such relief.

*By the Court.*—Order affirmed.