VARIANCE, INC., Respondent, v. LOSINSKE, Appellant.

*No. 160 (1974). Argued October 28, 1975.—*
*Decided January 6, 1976.*
(Also reported in 237 N. W. 2d 22.)

For the appellant there was a brief and oral argument by *L. V. Kaminski* of Princeton.

For the respondent there was a brief by *Gonyo & Robinson* of Berlin, and oral argument by *Timothy D. Robinson.*

WILKIE, C. J. This appeal involves an agreement between the defendant-appellant, Harold Losinske, and the plaintiff-respondent, Variance, Inc., "to sell, convey, and transfer" a liquor license in the city of Berlin, Wisconsin.

In the fall of 1972, Losinske, holder of a Berlin liquor license, entered into this agreement whereunder the plaintiff agreed to pay $1,500 "upon acceptance by the City Council of the buyer's (Variance) application for said license." Losinske also agreed "to submit a letter of withdrawal of his license upon the city's acceptance of the buyer's application." It was further agreed that the transaction "is to be concluded on or before December 30, 1972, unless extended by both parties."

Robert Gonyo, secretary-treasurer of the plaintiff corporation, paid the $50 down on November 18, 1972, and the balance of $1,450 on December 12, 1972. This was well before the Variance application for a liquor license was submitted and before Losinske took any action to withdraw his existing license. Variance later applied for a license, and after that application was denied, Variance demanded the return of $1,500, but Losinske

refused to return the money. The Berlin City Council had issued the liquor license to the local chapter of the Knights of Columbus. All of this led to a suit by Variance and to a judgment after trial for $1,500. Losinske appeals.

The sole issue on this appeal is whether the trial court was correct in ruling as follows:

"THE COURT: It would appear to the court that certainly a crucial condition of the agreement between the parties was the granting of the license by the City Council and the same was not done and the plaintiff is entitled to judgment in the amount of $1,450.00, both parties to pay their own costs.

"[Plaintiff's Attorney]: I believe it is $1,500.00, $1,450.00 and the $50.00.

"THE COURT: It is $1,500.00, yes."

We agree that the issuance of a license to Variance was a condition precedent to its obligation to pay Losinske $1,500 for the license.

One fundamental proposition must be made clear. The outright sale, transfer, or assignment of a liquor license is illegal and unenforceable except as specifically authorized by statute.[1] Sec. 176.05 (5) allows transfer and sale of a liquor or beer license by an administrator, executor, surviving spouse, receiver, or trustee when the licensee dies, becomes bankrupt, or makes an assignment for the benefit of creditors. Sec. 176.05 (14) allows transfer of a license from one premises to another, but in this case the license holder remains the same. Neither of these provisions applies to the factual situation in this case.

---

[1] *Marquette Savings & Loan Asso. v. Twin Lakes* (1968), 38 Wis. 2d 310, 156 N. W. 2d 425; *Smith v. Whitewater* (1947), 251 Wis. 306, 29 N. W. 2d 33; *Smith v. Whitewater* (1947), 251 Wis. 313, 29 N. W. 2d 37; *State v. Bayne* (1898), 100 Wis. 35, 75 N. W. 403; *See also:* 45 Am. Jur. 2d, *Intoxicating Liquors,* sec. 177; 48 C. J. S., *Intoxicating Liquors,* sec. 138.

Neither *Sprecher v. Weston's Bar Inc.*[2] nor *Huntoon v. Capozza*[3] altered this general rule against outright transfer, sale, or assignment of liquor licenses. In *Sprecher* this court held that a contractual agreement by one party to forebear from seeking a transfer of a liquor license to another premises was an enforceable obligation. In *Huntoon* it was held that a contractual provision that a land contract vendee would do nothing to jeopardize an existing license was enforceable by the vendor. The rule established by *Sprecher* and *Huntoon* is thus that contractual provisions which do not involve transfer are enforceable, while those that involve transfer, sale, or assignment are not enforceable, except as provided by statute.

In the instant case we have a situation that does not involve a direct transfer or sale of a liquor license but rather a promise to surrender the Losinske license upon a successful application by Variance. The contract can thus be interpreted as an agreement by Losinske to surrender his license to the municipality in consideration of the payment by Variance of $50 down and $1,450 if its application for a license was successful. Losinske certainly had the right to surrender his license to the municipality.[4] Once this was done, the municipality could grant Variance a license for the remainder of the license year.[5] Such a contract is legal and enforceable. This court must assume that the parties attempted to enter into a legal and enforceable contract, and an in-

---

[2] (1971), 52 Wis. 2d 677, 191 N. W. 2d 212.

[3] (1973), 57 Wis. 2d 447, 204 N. W. 2d 649.

[4] *See:* 48 C. J. S., *Intoxicating Liquors,* p. 233, sec. 115, where it is said that "A licensee or permittee may surrender his license or permit. . . ."

[5] Sec. 176.05 (6), Stats., provides that "Licenses may be granted which shall expire on the 30th day of June of each year upon payment of such proportion of the annual license fee as the number of months or fraction of a month remaining until June 30 of each year bears to 12. . . ."

terpretation favoring legality and enforceability should be adopted.[6]

Both parties agree that the obligation by Variance to pay $1,450 upon acceptance by the City Council of its application for a license is a condition precedent to Variance's obligation to pay $1,450, and this provision does not merely fix a time for payment. Losinske argues that Variance waived this condition precedent by paying the $1,450 when it was under no obligation to do so and prior to any application by it, any withdrawal by Losinske, and any decision by the Common Council. In the alternative, Losinske argues that Variance is equitably estopped from asserting the failure of the condition precedent because of this advance payment.

In regard to waiver, both of the parties discuss *Charley v. Potthoff,*[7] a very colorful case involving a series of unsuccessful operatic performances given in Milwaukee by a group known as Charley's Grand French Opera of New Orleans. In spite of its colorfulness, however, this case is inapposite to the facts of the present case, since it deals with waiver of a breach of contract by payment, and not waiver of a condition precedent by payment. Although no Wisconsin case has directly decided the issue of waiver of a condition precedent by advance payment, the more general problem of waiver of a condition precedent has been discussed in *Fun-N-Fish, Inc. v. Parker*[8] and *Godfrey Co. v. Crawford.*[9] In *Fun-N-Fish* the plaintiff had tendered $2,000 along with an offer to purchase the defendant's resort. The defendant accepted the offer, which contained a provision that the resulting contract would be null and void if the plaintiff could not procure the necessary licenses for the resort. However, before

---

[6] *Huntoon v. Capozza, supra,* footnote 3, at page 458; *Sprecher v. Weston's Bar, Inc., supra,* footnote 2, at page 680.

[7] (1903), 118 Wis. 258, 95 N. W. 124.

[8] (1960), 10 Wis. 2d 385, 103 N. W. 2d 1.

[9] (1964), 23 Wis. 2d 44, 126 N. W. 2d 495.

ascertaining whether the necessary license would be is-
sued, the plaintiff entered into a land contract without
any such condition precedent and assumed control of the
premises. This court held that such actions constituted
a waiver of the prior condition precedent in the offer
and acceptance. The court also noted that, had the
plaintiff stuck with the offer and acceptance, it could
have had this contract set aside upon failure to obtain
the licenses and could presumably have recovered the
money it had paid. In *Godfrey* the court held that a
plaintiff could waive a condition precedent regarding a
zoning change in a contract for the sale of real estates,
since such condition had been inserted for its own benefit.

More specific guidelines for determining whether or
not there has been a waiver of a contractual provision
were set forth in *Hanz Trucking, Inc. v. Harris Brothers
Co.*[10] According to *Hanz Trucking* one of the essential
elements of a waiver is the intention to relinquish the
right in question.[11] In this case the trial court, in ruling
in favor of Variance, impliedly found that the evidence
did not establish that Variance, by its advance payment
of $1,450, evinced an intent to abandon its right to later
insist upon return of this money if license application
was denied. Gonyo, the secretary-treasurer of Variance,
testified that he made this advance payment only because
the Losinskes then needed the money. The Losinskes
testified that Gonyo made the payment in order to close
the deal. It cannot be said that the trial court's implicit
finding is against the great weight and clear preponder-
ance of the evidence, nor can it be concluded, as a matter
of law, that Gonyo's conduct reveals an intention to give
up the condition precedent. This is so especially be-
cause procurement of the license from the City Council

[10] (1965), 29 Wis. 2d 254, 138 N. W. 2d 238.
[11] *Hanz Trucking, Inc., supra,* footnote 10 at page 266. *See also:*
17A C. J. S., *Contracts,* p. 690, sec. 491.

was the reason behind the whole transaction, and it is unlikely that Gonyo would casually and without comment waive his right to a refund if the deal did not go through.

A similar defect of proof affects defendant's claim of equitable estoppel. In *Gabriel v. Gabriel*[12] this court reiterated two rules regarding proof of equitable estoppel. The first is that proof of estoppel must be clear, satisfactory, and convincing and is not to rest on mere inference and conjecture. The second is that the party asserting the estoppel must demonstrate that the act relied upon was done knowingly or with intent that it be relied upon. The defendant fails to meet either of these requirements. As for the first requirement, while there are scattered suggestions in the record that Losinske may have relied upon Variance's advance payment, these suggestions do not come close to meeting the required burden of proof. As for detriment, the only indication of this is defendant's contention that, but for plaintiff's advance payment, he would have been able to seek a similar contract with another party. However, this claim of detrimental reliance is defeated by the conclusion below that the parties extended the contract past the December 30 deadline, thereby precluding Losinske from seeking another contract while the instant one was still in effect. As for the second requirement, that of action with knowledge or intent that it be relied upon, the trial court apparently believed Gonyo's testimony that his only aim in paying the Losinskes in advance was to aid them in their efforts to set up another tavern and not to cause them to rely upon a belief that he had given up the condition precedent. It cannot be said that this implicit finding of the trial court runs contrary to the great weight and clear preponderance of the evidence.

The agreement provided that "this transaction is to be concluded on or before December 30, 1972, unless

[12] (1973), 57 Wis. 2d 424, 204 N. W. 2d 494.

extended by both parties hereto." It is undisputed that Variance did not apply for a license before this date. Losinske argues that Variance cannot base its recovery upon a failure of the condition precedent that its application be accepted because its own wrongful inaction in not applying in timely fashion prevented the occurrence of this condition. This argument falls within the established rule that a party may not take advantage of a failure of a condition when it has unjustifiably prevented that condition from taking place.[13]

However, if the contract was extended pursuant to its terms by both parties, then Variance's time for applying would also have been extended, and the defendant could make no complaint about a failure to apply before December 30. The subsequent conduct of the parties is consistent only with the conclusion that they did extend the contract. The extension provision in the contract merely provided that its duration could be "extended by both parties." No formal or written action was required for an extension, and this fits in with the brevity of the original contract and the lack of formality that characterized this whole transaction. According to the testimony, on or about April 16, 1973, Losinske visited Gonyo with the letter from the city clerk regarding license applications. Together they drafted a letter, later signed by Losinske and brought to the city clerk, which stated that Losinske was withdrawing his right to a liquor license in the city of Berlin. On that same date, Gonyo applied for this liquor license. These are precisely the acts which the contract between the parties envisioned. They are also acts which require the conclusion that, on April 16, 1973, the parties regarded the contract as still in full force and effect. Under these circumstances it must be concluded that the parties extended the contract beyond the original deadline of December 30, 1972.

[13] 3A Corbin, *Contracts*, sec. 767.

Defendant points out that the contract refers to the license which Losinske "presently" held. He argues in effect that, since this language names the 1972–1973 liquor license, the contract cannot be extended to a 1973–1974 license, for which Variance applied on April 16, 1973. This interpretation of the contract is unduly narrow. More important, it runs contrary to the intention of the parties as expressed by their actions, since their actions on April 16, 1973, demonstrate that they regarded the contract as covering the upcoming license year as well as the current one.

During the trial, counsel for Losinske began to question Gonyo regarding attempted sales by Gonyo of the license which he had contracted to procure from Losinske. This apparently was to show that Gonyo was speculating with the license. The trial court was correct in excluding this evidence on the ground of irrelevancy. Even if the testimony could be regarded as relevant, it was well within the discretion of the trial court to exclude on the ground that its minimal probative value was outweighed by considerations of undue delay and waste of time.[14]

The plaintiff is entitled to judgment here for only $1,450. The contract between the parties provided for an unconditional payment of $50 at the signing of the agreement, and Gonyo made this payment in fact on November 18, 1972. The further payment of $1,450 was conditioned on the acceptance of the Variance application to the Berlin City Council. When this condition failed, Variance was entitled to the return of $1,450 and not to the additional $50 since that was paid as an unconditional down payment, and this $50 was consideration to Losinske for not revoking his offer and making a similar

[14] *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, certiorari denied (1968), 390 U. S. 959, 88 Sup. Ct. 1056, 19 L. Ed. 2d 1155.

agreement with another party during the effective period of the contract.

*By the Court.*—Judgment modified by reducing it in the amount of $50, plus interest, and as modified affirmed.

ROBERT W. HANSEN, J. *(dissenting)*. Under the laws of this state any town board, village board or common council may issue liquor licenses for the operation of a tavern to an "entitled person,"[1] at a particular location in the town, village or city,[2] for a limited period of time.[3] Such license may be transferred from one location to another, but only with the permission of the licensing authority and on application of the license holder.[4]

In the case before us, the defendant, Harold K. Losinske, held such liquor license and operated such tavern in the city of Berlin until the leased building in which the tavern was located was torn down to make room for new construction. Having no place to move to, the defendant did not apply for a transfer of license to another location. At that time Variance, Inc., had purchased land, intending, in the words of its president, ". . . to make that into a nightclub, restaurant establishment." So the company president drafted and Variance, Inc., entered into an agreement with defendant whereby defendant agreed "to sell, convey and transfer my Class A and B Liquor License that I presently hold" to Variance, Inc.[5]

---

[1] Sec. 176.05 (1), Stats.

[2] Sec. 176.05 (5), Stats.

[3] Sec. 176.05 (1a), Stats.

[4] Sec. 176.05 (14), Stats.

[5] In what is identified as "Terms," the agreement provided: (1) For payment of $50 at the signing, and $1,450 upon acceptance by the city council of the buyer's application for said license; (2) for seller to submit a letter of withdrawal of his license upon the city's acceptance of the buyer's application; and (3) the transaction to be concluded before December 30, 1972, unless extended by both parties.

The right to hold a liquor license in this state is a privilege,[6] not normally assignable.[7] Issuance or transfer of liquor licenses is at the discretion of the licensing authority.[8] Parties by contract cannot bind or interfere with the discretion of the licensing board.[9] However, our court has held that ". . . a provision for the assignment of a liquor license is unenforceable against the licensing authority but not necessarily void for all purposes."[10] The sale or assignment here can be construed, as was the lease provision in *Sprecher,* as no more than an agreement that the license holder ". . . would not seek to have the liquor license transferred or a new license issued."[11] So construed, the agreement is enforceable, and a construction favoring enforceability should be adopted.

In setting the "terms" for payment of the $1,500 due (all except the $50 down payment), the agreement of the parties provided that such balance due was to be paid ". . . upon acceptance by the City Council of buyer's application for said license." The agreement entered into on November 18, 1972, also provided: "This transaction is to be concluded on or before December 30, 1972." This second provision was complied with on December 12, 1972, when Variance, Inc., paid to defendant the $1,450 balance due under the agreement.

Variance, Inc., contends that "acceptance by the city" was a condition precedent to its being required to pay the $1,450 balance due under the agreement. But it did pay such balance on December 12, 1972, before it attempted any application for a liquor license. No claim is

[6] *Marquette Savings & Loan Asso. v. Twin Lakes* (1968), 38 Wis. 2d 310, 315, 156 N. W. 2d 425.

[7] *Sprecher v. Weston's Bar, Inc.* (1971), 52 Wis. 2d 677, 679, 191 N. W. 2d 212.

[8] *Marquette Savings & Loan Asso. v. Twin Lakes, supra,* footnote 6, at page 315.

[9] *Sprecher v. Weston's Bar, Inc., supra,* footnote 7, at page 680.

[10] *Id.* at page 680.

[11] *Id.* at page 680.

made that the balance was then paid under duress, fraud or mistake of fact. Whatever the intent of Variance as to consequences, the balance due was voluntarily paid in advance of either application to or acceptance by the city of an application by Variance for a license. The situation is completely analogous to that in the case where an offer to purchase was subject to and contingent upon the buyers obtaining "any and all licenses necessary" for the operation of a tavern-restaurant. Without waiting for the obtaining of such licenses, the buyer went ahead and closed the transaction.[12] By so electing to purchase and assume control of the property, one buyer, our court held, ". . . waived the condition as to obtaining the licenses."[13] The general rule in this state is that a party to a contract can waive a condition for his benefit.[14] Here the provision as to when the balance due was required to be paid was clearly for the benefit of Variance, Inc., and the earlier voluntary payment of such balance due is, as a matter of law, a clear waiver of its right under the contract to delay payment of such balance until action by the city on its application for a liquor license.

While an intention to relinquish the right in question is an essential element of waiver,[15] the search for intent as a question of fact to be resolved is to be made only " '. . . where the inference does not conclusively arise

[12] *Fun-N-Fish, Inc. v. Parker* (1960), 10 Wis. 2d 385, 389, 103 N. W. 2d 1.

[13] *Id.* at page 390.

[14] *Godfrey Co. v. Crawford* (1964), 23 Wis. 2d 44, 49, 126 N. W. 2d 495, citing *Fun-N-Fish, Inc. v. Parker, supra,* footnote 12, at page 389. In *Godfrey,* where under a contract of sale it was provided that failure to consummate a zoning change by March 1, 1963, would nullify the contract of sale, our court held that the buyer had the right to waive the provision inserted in the contract for his benefit.

[15] *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 265, 138 N. W. 2d 238.

as a matter of law.' "[16] Here, where actual payment was voluntarily made in advance of the date required for payment in the contract, intent to waive the right to delay payment until the contract-established date must be inferred as a matter of law from the very fact of the earlier payment made by the party for whose benefit the delayed payment provision was inserted in the contract.[17] When Variance paid the balance due in December, it extinguished, as well as waived, its right to delay such payment to a later date.

The writer would reverse the judgment of the trial court, and remand with directions to enter judgment for the defendant, dismissing the complaint of plaintiff corporation, with costs.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.

---

[16] *Id.* at page 265, quoting *Nelson v. Caddo-Texas Oil Lands Co.* (1922), 176 Wis. 327, 329, 186 N. W. 155.

[17] *Id.* at page 265, quoting *Nelson v. Caddo-Texas Oil Lands Co., supra,* footnote 16, at page 329.