FIRST WISCONSIN NATIONAL BANK OF OSHKOSH, Respondent, v. KRAMER, and another, Appellant.

*No. 75–112. Submitted on briefs October 7, 1976.—
Decided November 3, 1976.*
(Also reported in 246 N. W. 2d 536.)

For the appellants the cause was submitted on the brief of *Joseph A. Hoida* and *Berk, Pressentin & Hoida* of Green Bay.

For the respondent the cause was submitted on the brief of *Timothy M. Dempsey* and *Dempsey, Magnusen, Williamson & Lampe* of Oshkosh.

ROBERT W. HANSEN, J. The major questions to be answered on this appeal involve the nature of the individual guaranties given by these appellants to the respondent bank. The individual guaranties provide in part: "Notice of the acceptance of this guaranty and notice of any and all proceedings to collect from the principal debtor or anyone else, and any and all diligence of collection and presentation, demand, notice and protest

of every kind, are hereby waived." Also: "Said Bank need take no steps whatsoever to realize on any securities held by it, and from time to time and without notice may surrender or release all or any securities. . . ." The guaranties further provide that the respondent bank:

". . . shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on such indebtedness, liabilities or obligations, or any part of them, and what, if anything, shall at any time be done with reference to any security or collateral."

By virtue of the above language the trial court held the defendants had executed personal guaranties of payment not merely of collection, thus establishing their primary liability for payment independent of any collateral held by respondent bank. Finding primary liability upon these defendants, the trial court concluded the law in this state to be:

". . . that where there is a guarantee of payment of a note and mortgage, the mortgagee, upon the principal maker's failure to pay the note when due, may proceed directly against the guarantor to recover the amount then due (to the extent of the guarantee) regardless of whether any part is collectible from the principal maker and without first taking proceedings against him or resorting to securities."

The trial court cited the *Schlesinger Case*[1] in support of this conclusion. We agree it is here applicable and controlling. In *Schlesinger* the plaintiff sued on a guarantee of payment executed by the defendant in support of a loan to a corporation. Plaintiff sought not to proceed by foreclosure against the mortgaged property, but rather directly against the guarantors. This court found that to be a proper procedure, holding that the plaintiff as a creditor ". . . was not under any legal obligation to

---

[1] *Schlesinger v. Schroeder*, 210 Wis. 403, 245 N.W. 666 (1933).

first enforce collection from the maker or any other guarantor, or to first resort to securities given by the principal debtor."[2] The court further held:

"Under their guaranty of payment, and not merely of collection, plaintiff was entitled to immediate recovery from the sureties, and his right to immediate recovery from them could not be postponed for their benefit until after efforts to recover by foreclosure or otherwise were exhausted."[3]

█ It follows, exactly as the trial court held, that with these defendants liable for payment as guarantors, no efforts to collect from the KSW corporation or to foreclose under the mortgage were necessary as a prerequisite to enforcing the primary liability of these guarantors under their individual guaranties of payment. The language of the guaranty agreement here is clear: ". . . the undersigned hereby jointly and severally promise and agree to pay or cause to be paid . . . all loans, drafts . . . and all other indebtedness. . . ." This was a guaranty of payment, not collection. Defendants are individually liable as principals, under the *Schlesinger* holding, regardless of subsequent language in the guaranty also guaranteeing collection. Such added collection assurance is merely an addition to the primary promise of payment.[4]

█ It is thus clear respondent bank was entitled to proceed against the guarantors without proceeding against the debtor corporation or the collateral. However, appellants contend that respondent bank lost such right when it elected to proceed initially against the collateral by foreclosure proceedings. Defendants argue that once having commenced a foreclosure action, re-

---

[2] *Id.* at 408, 245 N.W. at 668.

[3] *Id.* at 409, 245 N.W. at 668.

[4] *See: Kasten v. G. A. Zuehlke Mortgage Loan Co.*, 213 Wis. 555, 557, 252 N.W. 162, 163 (1934).

spondent bank was required to proceed against the collateral to final conclusion of such foreclosure before it could proceed against the guarantors.

Defendants cite two Wisconsin cases as support for this proposition. One is the *Matsen Case*.[5] There an action for foreclosure was commenced in equity containing a prayer for a deficiency judgment. Subsequently a separate action was commenced at law against the debtors on their promissory note for the balance judged deficient under the mortgage foreclosure, then pending on appeal. The court sustained the debtor's defense of "another action pending."[6] In *Matsen* the court was construing sec. 278.10, Stats., now sec. 846.04, Stats.[7] Plaintiff there was prevented from seeking a separate deficiency judgment at law, while the original action was pending in equity.

■ In the case at bar, the deficiency judgment against appellants was also sought originally in the same action as the foreclosure. However, here the cause of action on the deficiency against defendants was dismissed "without prejudice and without costs."[8] Thus when the

---

[5] *Farmers & Merchants Bank v. Matsen*, 219 Wis. 401, 263 N.W. 192 (1935).

[6] *Id.* at 404, 263 N.W. at 193.

[7] *"846.04 Deficiency, judgment for.* The plaintiff may in his complaint demand judgment for any deficiency which may remain due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage and judgment for any such deficiency remaining after applying the proceeds of sale to the amount due may in such case be rendered. Such judgment for deficiency shall be ordered in the original judgment and separately rendered against the party liable on or after the coming in and confirmation of the report of sale, and be docketed and enforced as in other cases."

[8] Initially, the dismissal of the third cause of action (against appellants Kramer and Stone) was by order providing that such dismissal was "without costs." Subsequently, and upon waiver of all parties of record with no one appearing to oppose the same, the order dismissing such third cause of action was amended on

present action was commenced, no action then existed for the deficiency amount against these appellants. Thus respondent was free to bring the separate deficiency action which does not come within the *Matsen* rubric.

Additionally, in *Matsen,* the court dealt with a promissory note and mortgage, not with a guaranty creating primary liability. Where there is such guaranty of payment, not merely collection, the controlling *Schlesinger Case* makes clear that:

". . . upon the maker's failure to pay, plaintiff was entitled, under the bond, to recover from Schroeder and the surety the amount (within the pecuniary limits of the bond) then due from the maker *regardless of whether any part thereof was collectible from the latter."* [Emphasis supplied.][9]

What has just been said to distinguish the situation in *Matsen* from the situation in *Schlesinger* applies as well to the second case cited by appellants in support of the contention that a road once taken, must be followed to its ending before another road, originally available, can be traveled. That second case, the *Saukville Canning Company Case,*[10] fits the *Matsen* mold, not the *Schlesigner* situation. In *Saukville* the plaintiff sought to sustain a garnishment proceeding as ancillary to an action brought to foreclose a real estate mortgage in which action a deficiency judgment was demanded. Subsequent to the commencement of the foreclosure action, the plaintiff commenced an action against the debtor

October 15, 1973, to state: "That the plaintiff's Third Cause of Action against Gerald L. Kramer and Ben C. Stone be and is dismissed *without prejudice and without costs."* [Emphasis supplied.] It is the amended order, not the original order under these circumstances, that determines the nature of the dismissal.

[9] *Schlesinger v. Schroeder, supra,* footnote 1, at 407, 245 N.W. at 667.

[10] *Roberts v. Saukville Canning Co.,* 247 Wis. 277, 19 N.W.2d 295 (1945).

on the note that was secured by the mortgage. The garnishment proceeding was brought in aid of that action.[11] This court held the garnishment action improper because of the pendency of the foreclosure action.

Once again it is to be noted, as in *Matsen,* that the court was not construing a guaranty of payment agreement. In the case now before us, the language of the guaranty included the provision that the respondent bank ". . . need take no steps whatsoever to realize on any securities held by it, and . . . shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on such indebtedness . . . and what . . . shall at any time be done with reference to any security or collateral." Such provision and the entire guaranty agreement move the situation before us well away from *Matsen* and *Saukville Canning Company* and squarely under the *Schlesinger* holding. Under *Schlesinger* the bank's right to immediate recovery from the guarantors need not be ". . . postponed for their benefit until after efforts to recover by foreclosure or otherwise were exhausted."[12] With the appellants not parties to the foreclosure suit, the argument of "another action pending" is not available to them.

We affirm the trial court conclusion that the respondent bank had the right to proceed directly against these appellants as guarantors regardless of the fact that an action against the debtor corporation and the collateral, dismissed as against the individual appellants, had earlier been started and has not been finalized. Since we deal here with the question of liability under the personal guaranties, we do not reach the issue of entitlement of these appellants to an offset or payment

---

[11] *Id.* at 278, 19 N.W.2d at 295.

[12] *Schlesinger v. Schroeder, supra,* footnote 1, at 409, 245 N.W. at 668.

from the respondent bank for amounts of money secured by said bank in proceedings against the debtor corporation or the collateral. While it is clear that the bank is not entitled to recover more than it was owed, we see the entitlement of these appellants to offset or recovery from the debtor corporation or collateral as not now before us. The issue before us concerns the liability of the appellants as guarantors under their guaranty agreement with the bank. As to the interest of these appellants in the mortgage note and mortgage foreclosure, *Schlesinger* states:

"Until payment to plaintiff by Schroeder or the Massachusetts Bonding & Insurance Company of the guaranteed indebtedness, or at least an offer to pay that indebtedness upon the assignment of the note and mortgage by plaintiff to them, under such circumstances as to entitle them to subrogation, they had but an inchoate interest in the note and mortgage, which could not be enforced by them until the right of subrogation vested in them upon payment by them. . . .
"Until the sureties became entitled to those securities they were not entitled to have them enforced for their benefit."[13]

This opinion limits itself solely to the issue of the liability of these appellants as guarantors under their guaranty agreement. It does not deal with, much less limit, their right to be subrogated or benefit from proceedings instituted or available against the debtor corporation or the collateral.

Defendants-appellants claim an abuse of trial court discretion in the granting of summary judgment to plaintiff-respondent. Summary judgment ". . . is a drastic remedy and should not be granted if any material facts are in dispute or if the inferences which may

---

[13] *Id.* at 408, 409, 245 N.W. at 668.

reasonably be drawn from the facts are doubtful."[14] However, where material facts are not in dispute and inferences reasonably to be drawn from such facts are not doubtful, then ". . . only a matter of law is presented which should be decided on the motion [for summary judgment]."[15] Also, "[w]here there is no issue of fact that should be tried or where there is an issue of law that can be determined so as to conclude the case, summary judgment should be used."[16] Having examined appellants' claims that there were here issues of fact resolvable only at and by trial, we conclude there was before the trial court no issue of fact requiring trial and only questions of law to be resolved. We hold that the plea in abatement of appellants was properly denied, and the motion for summary judgment, as made by the respondent bank in the trial court, was properly granted.

*By the Court.*—Judgment affirmed.

[14] *Peterson v. Maul,* 32 Wis.2d 374, 376, 377, 145 N.W.2d 699, 701, 702 (1966). *See also: Hardscrabble Ski Area v. First Nat. Bank,* 42 Wis.2d 334, 166 N.W.2d 191 (1969).

[15] *Bolen v. Bolen,* 39 Wis.2d 91, 93, 158 N.W.2d 316, 317 (1968).

[16] *Capt. Soma Boat Line, Inc. v. Wisconsin Dells,* 56 Wis.2d 838, 842, 203 N.W.2d 369, 371 (1973).