BANK OF SUN PRAIRIE, Plaintiff-Appellant, v. OPSTEIN,
Defendant-Respondent.

Supreme Court

*No. 76–189. Submitted on briefs November 1, 1978.—*
*Decided January 9, 1979.*
(Also reported in 273 N.W.2d 279.)

670

672

For the appellant the cause was submitted on the brief of *Aulik & Brill, S.C.*, of Sun Prairie.

For the respondent the cause was submitted on the brief of *Tod B. Linstroth* and *Michael, Best & Friedrich* of Madison.

DAY, J.  This is an appeal from a judgment of the Dane County Circuit Court, the Honorable Richard W. Bardwell, presiding, dated July 8, 1976, dismissing the action brought by the Bank of Sun Prairie against Donald Opstein as guarantor of two notes owed to the bank.

Two principal issues are raised on this appeal:

1. Was the finding by the trial court that the guarantee contract was modified by the parties to provide that assignment of the security interest in the collateral by the bank to Mr. Opstein was a condition precedent to his liability as a guarantor against the great weight and clear preponderance of the evidence?

We hold the finding by the trial court was not against the great weight and clear preponderance of the evidence.

2. Was the bank equitably estopped from enforcing the guarantee contract against Mr. Opstein?

We hold the bank was estopped. We affirm.

On February 28, 1972, the Bank of Sun Prairie made two loans to Larry and Patricia Sornberger. The loans were to consolidate debts which the Sornbergers had accumulated in the past. Two separate notes were made: one for $4,125.24 was secured by an interest in the Sornbergers' household goods, the second for $1,499.76 was secured by security interests in two automobiles owned by the Sornbergers. In addition, the bank asked for a guarantor or co-signer. Donald Opstein, Mr. Sornberger's employer, agreed to guarantee the loans up to $3,300.

The guarantee contract was a printed, standard guarantee form. However, typed at the bottom of the sheet were the words "The Bank of Sun Prairie agrees to assign first mortgage of household goods to Guarantor."

The Sornbergers defaulted on their payments and the bank brought action against Mr. Opstein as guarantor of the notes. Trial was to the court without a jury. The trial court found in favor of Mr. Opstein and entered judgment that the bank could not recover from Mr. Opstein and dismissed the action on its merits. The bank appealed from that judgment.

At the trial, Duane Manley, Vice President of the bank, testified that he explained to Mr. Opstein the obligations he would have as a guarantor. He testified that he told Mr. Opstein that the bank would assign the security interest after he paid off the loans in the event of default by the Sornbergers. Mr. Opstein testified that he guaranteed the notes with the understanding that the security interest in the household goods was to be transferred to him upon his signing the guarantee.[1] Mr. Opstein also testified that he requested that he be given notice within ten days of default by the Sornbergers.

Mr. Manley testified that the bank did not usually appraise household goods used as security for a loan, but usually went by a rule of thumb that furnishings of a three-bedroom house would be worth approximately $1,000–$1,500. However, Mr. Opstein testified that he relied on a list of household goods with values attached shown to him at the bank. This list was prepared by Mr. Sornberger. Mr. Opstein testified, "I was given to understand that by this list that there was more than $4,000 worth of security. That did not include the antiques, which have additional values and were not listed." There

---

[1] Mr. Manley testified that Mr. Opstein would have recourse against both the cars and the household goods, but this was not reflected in the written agreement.

was no testimony that the bank actually represented the goods as worth $4,000, but neither did it not inform Mr. Opstein that they were not worth that amount.

There was testimony that the Sornbergers were falling behind in their payments in 1973. Extensions on payment were granted by the bank on March 16, 1973 and January 9, 1974. Mr. Opstein had no notice of these extensions. Mr. Manley testified to repeated efforts to make telephone contact with Mr. Opstein. He said he would leave word for Opstein to call him "which he very seldom did." Mr. Manley's testimony was unclear as to whether he actually reached Mr. Opstein by telephone. However, Mr. Opstein flatly denied ever receiving any communication from the bank about delinquencies on the loan until March 22, 1974 when he received a letter from Mr. Manley.

The Sornbergers filed bankruptcy in October, 1974. Mr. Opstein denied receiving notice of a meeting at the Sornbergers' home to appraise the household goods. Mr. Manley testified that on November 4, 1974, he went to the Sornbergers' home and appraised the entire list of household goods and automobiles at a maximum of $150 to $200. The Sornbergers offered to buy the items from the bank at $300. About fifty per cent of the items on the list were missing at the time of this appraisal. Mr. Manley testified that the bank did not want to foreclose on the household goods, but that the bank would assign the list to Mr. Opstein when he paid off the loan. The balance owed as of August 30, 1974 was $1,994.54 on one note, and $720.58 on the smaller note.

The first question is: Was the finding by the trial court that the guarantee contract was modified by the parties to provide that assignment of the security interest in the collateral by the bank to Mr. Opstein was a condition precedent to his liability as guarantor against

the great weight and clear preponderance of the evidence?

Findings of fact by the trial court will not be upset on appeal unless they are clearly erroneous and against the great weight and clear preponderance of the evidence. *In re Estate of Taylor,* 81 Wis.2d 687, 696, 260 N.W.2d 803 (1978). The evidence supporting the findings of the trial court need not in itself constitute the great weight or clear preponderance of the evidence; nor is reversal required if there is evidence to support a contrary finding. Rather, to command a reversal, such evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *In re Estate of Jones,* 74 Wis.2d 607, 611, 247 N.W.2d 168 (1976). In addition, when the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Gehr v. Sheboygan,* 81 Wis.2d 117, 122, 260 N.W. 2d 30 (1977).

A question of fact is presented when the language of a contract is reasonably susceptible of different constructions. *Lemke v. Larsen Co.,* 35 Wis.2d 427, 432, 151 N.W.2d 17 (1967). The general rule is that ambiguous contracts are to be construed against the maker or drafter. *Garriguenc v. Love,* 67 Wis.2d 130, 135, 226 N.W.2d 414 (1975). If the contract of a gratuitous surety is ambiguous it must be liberally construed in favor of the gratuitous surety. *Vandervest v. Kauffman Pizza, Inc.,* 60 Wis.2d 230, 244, 208 N.W.2d 428 (1973).[2]

---

[2] There is a distinction between a guarantor and a surety in that a surety is primarily liable and a guarantor is secondarily liable. *Associates Financial Services v. Eisenberg,* 51 Wis.2d 85,

This dispute essentially involved a conflict in testimony between Mr. Manley and Mr. Opstein. Mr. Manley testified that it was clear that the security interest would be assigned after Mr. Opstein paid off the loan. Mr. Opstein testified that he expected the security interest to be assigned to him if the Sornbergers should default. The phrase "The Bank of Sun Prairie agrees to assign first mortgage of household goods to guarantor" was ambiguous in that it did not make clear when the assignment was to be made. The judge was entitled to rely on Mr. Opstein's testimony, and come to the conclusion that the assignment was a condition precedent to the guarantor's liability. The trial court's ruling was in accordance with the principle that an ambiguous contract will be construed against the party who prepared the document.

The bank argues that it had no legal duty to assign its collateral to the guarantor prior to payment, that it had no legal duty to proceed against the collateral security, and that it had no duty to give notice of default to the guarantor.

A guaranty may be one of several types: absolute or conditional, a guaranty of payment or collection, a general, special, continuing or unlimited guaranty, or a letter of credit. See 38 C.J.S. *Guaranty,* sec. 7, p. 1139.

With a guaranty of payment, a creditor is " 'not under any legal obligation to first enforce collection from the maker or any other guarantor, or to first resort to securities given by the principal debtor. . . . Under [a] guaranty of payment, and not merely of collection, plain-

90, 186 N.W.2d 272 (1971), but that distinction is not material here. Both a contract of surety and a contract of guaranty are security devices, and when ambiguous the same principle of construction applies. *Id.*

tiff was entitled to immediate recovery from the sureties, and his right to immediate recovery from them could not be postponed for their benefit until after efforts to recover by foreclosure or otherwise were exhausted.'" *First Wis. Nat. Bank of Oshkosh v. Kramer,* 74 Wis.2d 207, 246 N.W.2d 536 (1976).

"Guaranties of payment 'are absolute, not collateral promises. . . . Unlike the contract of an indorser, there is no condition as to demand and notice of default annexed to a contract of guaranty of payment or of performance.'" *Estate of Menzner,* 189 Wis. 340, 341, 207 N.W. 703 (1926). Nor is it any defense for a guarantor of payment as distinguished from a guarantor of collection that the creditor "through negligence, or lack of due diligence, lost or dissipated the collateral furnished by the debtor." *United States v. Klebe Tool & Die Co.,* 5 Wis.2d 392, 397, 92 N.W.2d 868 (1958).

With an absolute guarantee of payment, the law imposes no duty upon the creditor to notify the guarantor of the nonpayment of the note by the principal maker. *Farmers State Bank v. Hansen,* 174 Wis. 100, 103, 182 N.W. 944 (1921).

However, the note in this case was not an absolute guarantee, but rather was found by the trial court to have been conditional upon the assignment of the security interest to the guarantor. It is clear that the bank never turned its security interest in the household goods over to the guarantor and thus it failed to fulfill the condition precedent.

The bank also points to four specific factual findings by the trial court which it claims are not supported by the evidence. Those findings are:

1. The bank never offered to assign to Mr. Opstein its security interest in the household goods and furniture of the Sornbergers.

This finding is taken out of context. It is true that the bank offered to assign the security interest to Opstein if he would pay the loan. However, the issue was whether the Bank was willing to assign the security interest before the guarantor tendered payment. This the bank was clearly unwilling to do.

2. It was not until March 22, 1974 that Mr. Opstein was advised of the Sornbergers' default.

The evidence on this point was in conflict. Mr. Manley testified to leaving telephone messages for Mr. Opstein. However, his testimony was unclear as to whether he actually made telephone contact. Mr. Opstein, on the other hand, flatly denied any knowledge whatsoever of the Sornbergers' financial difficulties until the letter of March 22, 1974. Therefore, there was credible evidence in the record for the court to find as it did.

3. The bank never attempted to realize on its security interest.

As Mr. Opstein points out, the bank does not argue that it ever attempted to realize on its security interest. Rather, Mr. Manley testified that it offered to assign the household goods to Mr. Opstein when he paid the loan.

4. The Sornbergers made substitutions of collateral with the bank's knowledge, though the bank gave no notification of such substitutions to defendant.

We find nothing in the record that supports the finding that the Sornbergers made substitutions of collateral, or that the bank had knowledge of such substitutions. But lack of such support in the record on this point does not affect the outcome of the case.

The second issue is: Was the bank equitably estopped from enforcing the guarantee contract against Mr. Opstein?

The trial court in the instant case relied on equitable principles in concluding that the bank was estopped from enforcing its guarantee against Mr. Opstein. The trial court reasoned that the collateral was ample to protect the guarantor at the time he signed the guarantee, but by the time the guarantor was informed of the debtors' default, many of the items comprising the collateral had been disposed of by the debtors.

Mr. Manley of the bank testified that the bank did not appraise the value of the household goods, but rather went by a rule of thumb that the furnishings of a three-bedroom home would be worth about $1,000 to $1,500. However, Mr. Opstein relied on the value of the collateral as furnished to the bank by the Sornbergers as worth about $3,500. The bank did not inform him that the list could not be taken at face value.

The trial court correctly points out that from the record it is impossible to determine the actual value of the collateral at the time the Sornbergers first defaulted on their loan obligations.

*In Matter of Estate of Alexander,* 75 Wis.2d 168, 183, 248 N.W.2d 475 (1977), this court set out the test for equitable estoppel:

" 'The tests for applicability of equitable estoppel as a defense derive from the definition by this court of such estoppel to be: ". . . action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. . . ." Three facts . . . must be present: (1) *Action or nonaction* which induces (2) *reliance* by another (3) to his *detriment.* . . .' "

Furthermore, the proof of estoppel must be clear and convincing, and may not rest upon conjecture. *Id.* It

is elementary that the reliance must be reasonable. *Kohlenberg v. American Plumbing Supply Co.*, 82 Wis.2d 384, 396, 263 N.W.2d 496 (1978).

There is no evidence to show that the bank acted fraudulently or in bad faith. However, they did fail to explain to Mr. Opstein the customary way in which household goods which are used as security are valued by the bank. While Mr. Opstein testified that he had guaranteed many notes in the past, he was an insurance man, not a lawyer or a banker. It is clear that he did rely on the values placed on the items of security shown to him at the bank when he agreed to give the guarantee, and that his reliance was to his detriment. It is reasonable that a lay person would accept at face value the list shown to him at the bank as representing the worth of that collateral.

The bank asserts that even if it had the obligation to assign the colllateral as a condition precedent to the guarantor's liability, the guarantor waived that defense by laches in that he made no demand for the assignment of the collateral to him.

Waiver is defined as a voluntary and intentional relinquishment of a known right. *Hanz Trucking, Inc. v. Harris Brothers Co.*, 29 Wis.2d 254, 264, 138 N.W.2d 238 (1965). Intent to waive is an essential element of waiver. *Variance, Inc. v. Losinske*, 71 Wis.2d 31, 38, 237 N.W.2d 22 (1975). In *Variance*, this court said that when the trial court ruled in favor of the party against whom the waiver defense was asserted, it impliedly found that the evidence did not evince an intent to abandon the right in question. Such implicit finding could not be overturned unless it was against the great weight and clear preponderance of the evidence, or it could be concluded as a matter of law that the party's conduct revealed an intent to give up the condition precedent. Moreover, in cases in which waivers of conditions prece-

dent have been found, there was either express notification of waiver or affirmative conduct by the waiving party clearly inconsistent with the contract condition. *Godfrey Co. v. Crawford*, 23 Wis.2d 44, 126 N.W.2d 495 (1964); *Fun-N-Fish, Inc. v. Parker;* 10 Wis.2d 385, 103 N.W.2d 1 (1960).

In the instant case, the trial court found that the assignment of the collateral was a condition precedent to the guarantor's liability. As in *Variance, supra,* the court impliedly found that the guarantor did not intend to waive the condition precedent. The record showed that Mr. Opstein acted consistently with his belief that he was not liable until the bank assigned the collateral to him. The finding of the trial court was not against the great weight and clear preponderance of the evidence. Furthermore, since the trial court found that the defendant was unaware of the debtors' defaults until March 22, 1974, the defendant would have had no reason to demand the assignment until that time. In addition, in the March 22, 1974 letter, the Bank merely asked the guarantor to speak to the debtors about their payments. It was not until the letter of August 9, 1974 that the bank asked the guarantor to make payment himself. There would have been no reason for the guarantor to ask the bank to fulfill the condition precedent until he was asked to pay the guarantee. In addition there was testimony that the typed ambiguous language at the bottom of the guarantee form was not inserted until the day after Mr. Opstein signed the document. Mr. Opstein testified that he never saw the document until after the fact and that he signed it relying on Mr. Manley to insert the language about the assignment.

Finally, "the elements of laches are a cause of action against the defendant, an unreasonable delay and prejudice to the defendant resulting from the delay." *Wiscon-*

*sin Brick & Block Corp. v. Vogel,* 54 Wis.2d 321, 327, 195 N.W.2d 664 (1972). While the guarantor had a defense against the bank in that he had no liability until the fulfillment of the condition precedent, it cannot be said that he had a cause of action against the bank. Thus, "laches" does not apply and we have already concluded there was no waiver. The action was properly dismissed.

*By the Court.*—Judgment affirmed.